IN THE MATTER OF: DARIYAN BARKLEY, LATERA BARKLEY AND JOHNNY BARKLEY

No. 8212DC265

(Filed 15 March 1983)

1. **Evidence § 34.5— testimony to show witness's state of mind**

    In a proceeding to terminate parental rights, the trial court properly admitted testimony as to statements made by respondent's boyfriend concerning punishment for respondent's child since the testimony was not admitted to prove the truth of the matter contained in the statements but rather to show that the statements were made and the child's resulting state of mind.

2. **Parent and Child § 1— termination of parental rights—excluding mother from courtroom while child testified—no error**

    There was no error in the court's granting petitioner's motion to exclude respondent from the courtroom while respondent's eleven-year-old son testified in a proceeding to terminate respondent's parental rights since respondent's right to confront the witnesses against her was protected through the court allowing each party's counsel to question respondent's child themselves, in the courtroom, with the questions and answers being recorded.

3. **Parent and Child § 1— proceeding to terminate parental rights—use of unadjudicated acts as evidence for disposition**

    In a proceeding to terminate parental rights, the trial court properly allowed testimony as to respondent's lack of contact with her children after they had been removed from her home and as to respondent's failure to use social security payments for the benefit of her children since G.S. 7A-640 permits the use of unadjudicated acts as evidence to be considered for disposition and since the trial court considered the testimony for the purpose of determining an appropriate disposition.

4. **Parent and Child § 1— termination of parental rights—finding that children inadequately clothed**

    In a proceeding to terminate parental rights, there was sufficient evidence to support the court's finding that respondent's children were inadequately clothed.

APPEAL by respondent from *Guy, Judge.* Judgment entered 17 December 1981 in District Court, CUMBERLAND County. Heard in the Court of Appeals 20 January 1983.

On 8 September 1981 petitioner, Cumberland County Department of Social Services, filed a petition alleging neglect and abuse to terminate the parental rights of Mary Barkley in Dariyan Barkley, age 11, and John Barkley, age 5, her sons, and Latera Barkley, her 8 year old daughter.

Petitioner presented evidence tending to show that Dariyan ran away from home after being beaten by his mother's boyfriend, Lester Whittington. He went to his great-grandmother's home where he told her that Lester Whittington had beaten him because Dariyan was unable to keep the neighbor's children from making noise in the hallway outside the Barkley apartment. He also stated that Whittington had said that he would not punish Dariyan if he could guess from which window Whittington had observed him getting a switch earlier, but if Dariyan guessed wrong, he would "get thirty licks" with a switch. Dariyan guessed wrong and was receiving the switching when he was able to escape by feigning a need to go the the bathroom. While Whittington was out getting another switch, Dariyan ran to his great-grandmother's home.

After hearing his story, Dariyan's great-grandmother, Idella Chance, called the police who in turn contacted petitioner. Jo Anne Roach was sent from the Cumberland County Department of Social Services to investigate. After talking with Dariyan, Ms. Roach went to the Barkley home to talk with his mother. Mary Barkley denied that Lester Whittington had switched Dariyan, but agreed to Ms. Roach's request that Dariyan be allowed to remain outside the Barkley home with Ms. Chance until the investigation was complete. Upon Ms. Roach's request, Mrs. Barkley gathered some clothes to be taken to Dariyan and gave Ms. Roach five dollars with which to buy Dariyan some socks and underwear. After delivering the clothes to Dariyan, Ms. Roach left him at his great-grandmother's.

Later that same day Mary Barkley, Lester Whittington and Whittington's mother arrived at Ms. Chance's to take Dariyan away. Both Dariyan and Ms. Chance resisted, but eventually Dariyan was forcibly removed from Ms. Chance's home to Whit-

tington's mother's home. Ms. Chance immediately notified Ms. Roach who went to the Whittingtons to get Dariyan. Upon her arrival she found that Dariyan had been pinched, bruised and scratched on the underside of his arms thirty to forty times by his mother as punishment for running away. Dariyan also stated that she had thrown a can at him. At this time all three Barkley children were placed in the temporary custody of petitioner.

There was testimony indicating that Lester Whittington had physically abused Dariyan's younger brother and sister by forcing them to hold pennies on their outstretched arms for long periods of time, and beating them when they let their arms drop and the pennies fall off.

Ms. Roach and one other social worker testified that the three children were poorly clothed, even though Mary Barkley was receiving a $600.00 monthly Social Security check. Ms. Roach stated that when she first met Dariyan, he had numerous old scars and fresh wounds on various parts of his body which appeared to be the direct result of beatings. Finally, evidence was presented that Mary Barkley had shown no interest in the welfare of her children from the time they had been removed from her home up until the hearing.

On the basis of this evidence, the judge entered an order granting a termination of Mary Barkley's parental rights over her three children and placing them in the custody of the petitioner. From a judgment entered pursuant to the order, repondent appeals.

*Jennie Dorsett, for petitioner-appellee.*

*Assistant Public Defender Staples Hughes, for respondent-appellant.*

EAGLES, Judge.

[1] Respondent initially argues that the court erred when it denied respondent's motion to strike the testimony of Dariyan and Ms. Roach as to statements Lester Whittington made to Dariyan concerning the noise in the hallway and Dariyan's punishment for failing to stop it. We reject respondent's contention that Dariyan's and Ms. Roach's testimony as to the statements was

hearsay and excludable, since the testimony was not admitted to prove the truth of the matter contained in the statements but rather to show that the statements were made and Dariyan's resulting state of mind. *Wilson v. Indemnity Corp.*, 272 N.C. 183, 158 S.E. 2d 1 (1967); Brandis, 1 Brandis On North Carolina Evidence § 141 (2d rev. ed. 1982).

[2] Respondent next assigns as error the court's granting petitioner's motion to exclude her from the courtroom while Dariyan, her eleven-year-old son, testified. We reject respondent's argument that her right to confront the witnesses against her was denied when she was excluded from the courtroom. Although G.S. 7A-631 guarantees respondent the right to confront and cross examine the witnesses, the right to confront witnesses in civil cases is subject to "due limitations." See *Davis v. Wyche*, 224 N.C. 746, 32 S.E. 2d 358 (1944). Where, as here, the excluded party's presence during testimony might intimidate the witness and influence his answers, due to that party's position of authority over the testifying witness, any right under Ch. 7A, Art. 51 to confront the witnesses is properly limited. The present case is easily distinguishable from *Cook v. Cook*, 5 N.C. App. 652, 169 S.E. 2d 29 (1969), where it was held that the trial court had erred when it ordered that the child's testimony would be taken in chambers with only counsel for both parties being present. Unlike *Cook* where the judge did all the questioning in chambers, the trial court here preserved the adversarial nature of the process and protected defendant's right to confront the witnesses by allowing each party's counsel to question Dariyan themselves, in the courtroom, with the questions and answers being recorded. We find that respondent suffered no prejudice as a result of her exclusion from the courtroom during her son's testimony, since the trial court preserved respondent's opportunity to cross examine through her court-appointed counsel.

[3] Respondent next asserts as error the court's decision to allow testimony as to respondent's lack of contact with her children after they had been removed from her home pending the hearing to determine parental rights. Respondent also objected to the admission of testimony that respondent had been receiving $600.00 monthly in Social Security payments, but had failed to spend the money for the benefit of her children during that same period. G.S. 7A-640 permits the use of unadjudicated acts as

evidence to be considered for disposition. See *In re Vinson*, 298 N.C. 640, 260 S.E. 2d 591 (1979). While G.S. 7A-639 provides that "[n]o predisposition report shall be submitted to or considered by the judge prior to the completion of the adjudicatory hearing," there is no evidence in the record indicating that the trial court considered the above testimony for any purpose other than for determining an appropriate disposition. We therefore reject these two assignments of error.

[4]   Finally, respondent challenges the court's finding that her children were inadequately clothed. Ms. Roach testified that the respondent could not find any socks or underwear for Dariyan and had to give her money to purchase some for him. Another social worker, Mr. Locklear, said that on all four occasions that he was in respondent's home he observed the children in "raggedy" clothes. He also testified that the five-year-old child was wearing his eleven-year-old brother's pants and had to hold them up with his hand as they were too large and he had no belt. Since our appellate court is bound by the findings of fact made by a trial court where there is some evidence to support those findings, we find no merit in this assignment of error. 1 North Carolina Index 3d, Appeal and Error § 57.2.

For the above reasons, in the hearing to terminate parental rights, we find

No error.

Judges HEDRICK and JOHNSON concur.