IN THE MATTER OF JULIE ANN MURPHY AND STEPHANIE MURPHY

No. 9123DC271

(Filed 17 March 1992)

1. **Parent and Child § 1.5 (NCI3d); Constitutional Law § 108 (NCI4th)— termination of parental rights—incarcerated parent—presence at proceeding—no constitutional requirement**

The termination of an incarcerated respondent's parental rights at a hearing where he was represented by counsel but not present did not violate his state or federal constitutional rights. While the fundamental liberty interest protected by the Fourteenth Amendment includes the natural parents' ability to provide and maintain the care, custody and management of their child, fundamental fairness may be maintained in parental rights termination proceedings even when some procedures are mandated only on a case by case basis rather than through rules of general application. The record in this case does not disclose whether the trial court balanced the factors in *Mathews v. Eldridge*, 424 US 319, and made specific findings and conclusions regarding the minimum requirements of fundamental fairness; however, because child-custody litigation must be decided as rapidly as is consistent with fairness, the Court of Appeals concluded that analysis of the *Eldridge* factors, especially the risk of error, supported the trial court's denial of respondent's request to be present.

**Am Jur 2d, Parent and Child §§ 23, 34, 35.**

2. **Parent and Child § 1.5 (NCI3d)— termination of parental rights—incarcerated parent—not present at hearing—no statutory requirement**

There was no prejudicial error in the termination of an incarcerated respondent's parental rights without his presence where the trial court preserved the adversarial nature of the proceeding by allowing respondent's counsel to cross examine witnesses, with the questions and answers recorded, and respondent failed to produce any evidence of prejudice. N.C.G.S. § 7A-631.

**Am Jur 2d, Parent and Child §§ 23, 34, 35.**

IN RE MURPHY

[105 N.C. App. 651 (1992)]

APPEAL by respondent from judgment and order entered 9 January 1991 by *Judge Samuel L. Osborne* in YADKIN County District Court. Heard in the Court of Appeals 7 January 1992.

On 28 November 1988 the Juvenile Court of Cedar County, Iowa removed respondent's daughters from the custody of their mother and placed them in the custody of their father, the respondent. On 13 April 1989 respondent was convicted of three counts of first degree sexual offense (one count was reversed on appeal) and three counts of indecent liberties against one of his two daughters. Respondent was sentenced to three life terms with the North Carolina Department of Correction (one life term was vacated on appeal) to be served concurrently with three consecutive three year terms. On 6 February 1989 both of respondent's minor daughters were found to be "abused juveniles" and their custody was awarded to the Yadkin County Department of Social Services (YDSS). On 13 July 1990 YDSS filed a petition with the district court seeking termination of respondent's parental rights. An adjudicatory hearing was held on 31 December 1990. At the hearing respondent's motion that he be transported to the hearing from the Piedmont Correctional Center in Salisbury, North Carolina, where he was incarcerated was denied and his parental rights were terminated.

*Richard N. Randleman, P.A., by Richard N. Randleman, for petitioner-appellees.*

*Shore, Hudspeth and Harding, by Benjamin H. Harding, Jr., Guardian Ad Litem, for petitioner-appellees.*

*W. Lee Zachary, Jr. for respondent-appellant.*

EAGLES, Judge.

The sole issue raised in this appeal is whether the trial court violated respondent's State statutory rights as well as his constitutional rights under both the United States Constitution and the North Carolina Constitution by denying respondent's motion that he be transported from the State correctional facility where he was incarcerated to the termination hearing. The narrow question we face today is whether the State must transport incarcerated parents to court proceedings where their parental rights may be terminated in order that they may be present. We hold that an incarcerated parent does not have an absolute right to be transported to a termination of parental rights hearing in order that he may

IN RE MURPHY

[105 N.C. App. 651 (1992)]

be present under either statutory or constitutional law. Accordingly, we affirm.

## United States Constitution

[1] Our federal constitution recognizes that "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth Amendment." *Santosky v. Kramer,* 455 U.S. 745, 753, 71 L.Ed.2d 599, 606 (1982) (citations omitted). That fundamental liberty interest includes natural parents' ability to provide and maintain the care, custody and management of their child. *Id.* It does not evaporate simply because a parent has not been a model parent or has lost temporary custody of his or her child to the State. *Id.* Indeed, "[i]f anything, persons faced with forced dissolution of their parental rights have a more critical need for procedural protections than do those resisting state intervention into ongoing family affairs. When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures," which meet the rigors of the due process clause. *Id.*

> [T]he nature of process due in parental rights termination proceedings turns on a balancing of the "three distinct factors" specified in *Mathews v. Eldridge,* 424 US 319, 335, 47 L Ed 2d 18, 96 S Ct 893 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged procedure.

*Id.* at 754, 71 L.Ed.2d at 607 (citations omitted). However, "fundamental fairness may be maintained in parental rights termination proceedings even when some procedures are mandated only on a case-by-case basis, rather than through rules of general application." *Id.* at 757, 71 L.Ed.2d at 609. In *Lassiter v. Dep't of Social Services,* 452 U.S. 18, 68 L.Ed.2d 640, *reh'g denied,* 453 U.S. 927, 69 L.Ed.2d 1023 (1981), the Supreme Court affirmed a North Carolina ruling, (*In re Lassiter,* 43 N.C. App. 525, 259 S.E.2d 336 (1979), *disc. review denied and appeal dismissed,* 299 N.C. 120, 262 S.E.2d 6 (1980)) and held that appointment of counsel was not constitutionally required in every termination of parental rights proceeding. The Court stated:

> If, in a given case, the parent's interest were at their strongest, the State's interests were at their weakest, and the risks of

error were at their peak, it could not be said that the Eldridge factors . . . and that due process [do] not therefore require the appointment of counsel. But since the Eldridge factors will not always be so distributed, and since "due process is not so rigid as to require that the significant interests in informality, flexibility, and economy must always be sacrificed," *Gagnon v. Scarpelli*, 411 US, at 788, 36 L Ed 2d 656, 93 S Ct 1756, 71 Ohio Ops 2d 279, neither can we say that the Constitution requires the appointment of counsel in every parental termination proceeding. We therefore adopt the standard found appropriate in *Gagnon v. Scarpelli*, and leave the decision whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review.

*Lassiter*, 452 U.S. at 31, 68 L.Ed.2d at 652 (citation omitted). A parent's absence from a termination proceeding is of similar import. Accordingly, we are unable to say, as a matter of law, that fundamental fairness requires that the State transport an incarcerated parent to a termination hearing in order that he may be present. We leave that determination in the first instance to the trial court, subject to appellate review.

Here, the record does not disclose whether the trial court balanced the *Eldridge* factors and made specific findings and conclusions regarding the minimum requirements of fundamental fairness. "Nevertheless, because child-custody litigation must be concluded as rapidly as is consistent with fairness, we decide today whether the trial judge denied [the respondent] due process of law when he [denied respondent's request that he be transported to the hearing in order that he may be present]." *Lassiter*, 452 U.S. at 32, 68 L.Ed.2d at 653.

Analysis of the *Eldridge* factors supports the trial court's decision to deny respondent's request. The first *Eldridge* factor, the private interest affected, weighs against the respondent's absence from the adjudicatory hearing. The Supreme Court has held:

[I]t [is] "plain beyond the need for multiple citation" that a natural parent's "desire for and right to 'the companionship, care, custody, and management of his or her children'" is an interest far more precious than any property right. (Citations omitted). . . . "A parent's interest in the accuracy and

justice of the decision to terminate his or her parental status is, therefore, a commanding one."

*Santosky*, 455 U.S. at 758-59, 71 L.Ed.2d at 610 (citation omitted). However, the third *Eldridge* factor, the countervailing government interest, is equally commanding in favor of the State. Transportation of the respondent from his jail cell to the adjudicatory hearing would have worked more than a mere financial burden on the State. Respondent's presence at the hearing combined with his parental position of authority over his children may well have intimidated his children and influenced their answers if they had been called to testify. *See In re Barkley*, 61 N.C. App. 267, 270, 300 S.E.2d 713, 715 (1983). That risk becomes particularly significant where, as here, the respondent parent's incarceration is the result of his being convicted of sexual offenses he committed against his own children. This is exacerbated where the incarcerated respondent's victim-children have previously had to testify and be subject to cross examination in the criminal trial of their parent. The State also has a commanding interest in a correct decision. *Carrington v. Townes*, 306 N.C. 333, 338, 293 S.E.2d 95, 99 (1982), *cert. denied*, 459 U.S. 1113, 74 L.Ed.2d 965 (1983) (citing *Lassiter v. Dep't of Social Services*, 452 U.S. 18, 68 L.Ed.2d 640 (1981)). Additionally, transportation of the respondent from a secure prison cell to the adjudicatory hearing would have presented the respondent with an opportunity to attempt an escape and jeopardize the safety of the public as well as that of the officers assigned to transport respondent to the hearing.

Thus, determination of whether respondent's federal due process rights have been violated turns upon the second *Eldridge* factor, risk of error created by the State's procedure. On this record the risk of error caused by respondent's absence was slight. During the hearing, respondent's attorney did not argue that his client would be able to testify concerning any defense to termination, nor did he indicate how his client would be prejudiced by not being present. Indeed, he could point to no reason that the respondent should be transported to the hearing other than for respondent to contest his sexual assault convictions, an impermissible reason. *In re Wheeler*, 87 N.C. App. 189, 194-95, 360 S.E.2d 458, 462 (1987) (A parent may not relitigate prior convictions of sexual abuse at an adjudicatory hearing to terminate parental rights). The transcript of the hearing provides the following colloquy:

IN RE MURPHY

[105 N.C. App. 651 (1992)]

THE COURT: All right. And it's my understanding that you represent him not only in the criminal part but in this proceeding?

MR. ZACHARY: Yes, sir.

THE COURT: The question arises in my mind as to whether or not it would serve any useful purpose to bring him back from prison. Do you know why, for the record, he wants to be brought back?

MR. ZACHARY: Well, he denies that any of these things occurred and—

THE COURT: Well, have you explained to him that these convictions are res judicata?

MR. ZACHARY: Yes, sir, but he still wants to be present.

THE COURT: Is that the only reason he wants to be here that you know of? It's obvious if he's serving a life sentence he doesn't have any prospects of being able to raise these children.

MR. ZACHARY: No.

THE COURT: And the children are now—

MR. ZACHARY: Twelve and nine. (inaudible)

THE COURT: Well, if his only purpose, based on your statement, is to try to challenge these allegations of sexual abuse that were tried criminally, I'm going to express my opinion that that's res judicata at this point now that his appeals have ended.

MR. ZACHARY: Okay.

THE COURT: So I see no reason to bring him back from the prison system at this time, even though he may have that desire.

MR. ZACHARY: (inaudible)

The record before us is devoid of anything which would indicate any risk of error to the respondent caused by his absence. Indeed, during oral argument, respondent's attorney remained unable to offer any viable argument of any risk of error caused by his client's absence. The respondent did contend during oral argument that

he should have been allowed to testify that he wanted his mother (the children's grandmother) to gain custody of his children. However, respondent's wishes could have been adequately stated on his behalf by his counsel. This assignment does not present constitutional error. Accordingly, it is overruled.

## North Carolina Constitution

Respondent next argues that his absence from the termination proceeding violated his State due process rights found in the "Law of the land" clause of the North Carolina Constitution. N.C. Const. art. I, § 19. We disagree.

Our State has long recognized that the procedural protections afforded by our State Constitution are not to be lightly disregarded or trampled as a matter of convenience. The protections and the ideals which support them must be vigorously protected and held in highest regard. Nevertheless, constitutional interpretation must be guided by the dictates of rational minds. The protections afforded must be fair and reasonable and must not lead to either unfair, unreasonable or absurd results.

Here, we believe the standard adopted by the United States Supreme Court to determine what process is due in a parental rights termination proceeding, discussed above, is also the appropriate standard to determine whether the requirements of constitutional due process afforded by our State Constitution have been met. *See, e.g., Carrington v. Townes*, 306 N.C. 333, 339, 293 S.E.2d 95, 98-99 (1982), *cert. denied*, 459 U.S. 1113, 74 L.Ed.2d 965 (1983) (adopting same standard to determine whether counsel should be appointed in civil paternity cases); and *Jolly v. Wright*, 300 N.C. 83, 93, 265 S.E.2d 135, 142-43 (1980) (adopting same standard to determine whether counsel should be appointed in nonsupport civil contempt cases). Accordingly, we adopt that standard here. We emphasize that ordinarily the determination of whether minimal requirements of fundamental fairness have been met should occur in the first instance in the trial court, *See, e.g., Carrington*, 306 N.C. at 340-41, 293 S.E.2d at 99. However, because child custody decisions should be made as rapidly as the dictates of fairness allow, we adopt our analysis from above and decide the issue here against the respondent. This assignment of error is overruled.

[2] Finally, respondent argues that the trial court committed prejudicial error by denying his statutory right to confront and cross examine witnesses. We disagree.

G.S. 7A-631 provides:

> The adjudicatory hearing shall be a judicial process designed to adjudicate the existence or nonexistence of any of the conditions alleged in a petition. In the adjudicatory hearing, the judge shall protect the following rights of the juvenile and his parent to assure due process of law: . . . the right to confront and cross-examine witnesses . . . .

"Although G.S. 7A-631 guarantees respondent the right to confront and cross examine . . . witnesses, the right to confront witnesses in civil cases is subject to 'due limitations.' *See Davis v. Wyche*, 224 N.C. 746, 32 S.E.2d 358 (1944)." *In re Barkley*, 61 N.C. App. at 270, 300 S.E.2d at 715 (1983). When, as here, a parent is absent from a termination proceeding and the trial court preserves the adversarial nature of the proceeding by allowing the parent's counsel to cross examine witnesses, with the questions and answers being recorded, the parent must demonstrate some actual prejudice in order to prevail upon appeal. *In re Barkley*, 61 N.C. App. at 270, 300 S.E.2d at 715-16. Here, the respondent has failed to produce any evidence of prejudice. Accordingly, this assignment is overruled.

Affirmed.

Judges COZORT and ORR concur.