WYNN, Judge.
This appeal arises from a 12 August 2003 order of the Buncombe County District Court terminating the parental rights of respondent-mother with respect to C.D.M. and J.A.F.D. and respondent-father with respect to C.D.M. For the reasons stated herein, we affirm the trial court's order.
J.A.F.D. was born 21 June 1989. C.D.M. was born 11 April 1993. Respondent-mother is the natural mother of both children and respondent-father is the natural father of C.D.M. J.A.F.D.'s father voluntarily relinquished his rights. At the time of the termination the respondents were married. Evidence tended to show that both parents had a long history of drug abuse. The father had a significant history of criminal activity related to drugs and the mother had received in-patient treatment for depression. Beginning in 1998, the Buncombe County Department of Social Services ("DSS") began receiving child protective service reports on the family. In February 2001, DSS received additional reports of drug abuse in the home, one involving the mother smoking marijuana with the minors' older sister. Reports also indicated that the sister was the primary caretaker as the parents were often out all night.
Domestic abuse occurred in the home, with physical fights between the parents in the presence of the minors. The older sister reportedly abused J.A.F.D.
On 11 May 2001, the parents agreed with DSS to place the minors with a relative. This placement lasted only six days due to the father's harassment of the providers. The minors were moved to another relative's care. However, this placement lasted only two weeks due to the father's harassment. On 31 May 2001 the minors were then placed with a family friend. From that point on neither parent had contact with the minors.
On 25 September 2001 the trial court issued an order finding the minors neglected and in the protective care of DSS. The court issued several requirements for the parents to meet to regain custody of the minors, including: (1) provide financial support to placement providers; (2) provide three negative drug screens and begin substance abuse treatment prior to beginning supervisedvisits with the minors; (3) follow all treatment recommendations of Broughton Hospital (the mother); (4) complete a substance abuse assessment and follow all recommendations (the father); (5) obtain psychological evaluations; and (6) cooperate with DSS. In a 14 December 2001 review order, the court found that the parents had failed to comply with several of the conditions of the previous order including providing no drug tests or psychological evaluations. Neither parent attended the 16 November 2001 hearing; the father had been arrested for possession of cocaine and the mother's whereabouts were unknown.
The parents also failed to attend the next review hearing on 7 March 2002. On 11 April 2002 the court ordered that all previous orders remain in effect and "[t]hat there shall be no contact between [the parents] and the minor children."
On 14 June 2002 the court held a permanency planning and review hearing. Both parents were then in jail and attended it. At this point the minors were moved to live at Presbyterian Home, and the trial court changed the permanent plan from reunification to guardianship or adoption.
DSS had no contact with the mother until she called from Swain Recovery, a drug treatment center, in January 2003, stating that she wanted her children back. DSS had no contact with the father until the termination of parental rights hearing, held 2 July 2003.
At the time of the 2 July 2003 hearing, the mother had been out of jail for approximately four months. She testified that she had not done drugs for the past year, had attended narcoticsanonymous meetings three to five time a week, had lived in her own home, and had worked part-time. The father was incarcerated on a five-year sentence.
After a review of the evidence the court found that respondents neglected the minors when the minors were placed in the custody of DSS on 7 March 2002, and continued to neglect the minors in failing to provide love, comfort, or support for the minors pursuant to section 7B-1111(a)(1) of the North Carolina General Statutes. The court found that pursuant to section 7B-1111(a)(2) of the North Carolina General Statutes respondents had willfully left the minors in a placement outside the home for more than twelve months without showing any reasonable progress to correct the conditions which led to the removal of the minors. The court also found that pursuant to section 7B-1111(a)(3) of the North Carolina General Statutes respondents had willfully failed to pay a reasonable portion of the cost of care for the minors although physically and financially able to do so. The court ordered termination of both respondents' parental rights. Respondents appealed.
On appeal, the mother argues that: (1) the trial court lacked personal jurisdiction over her; (2) the trial court lacked subject-matter jurisdiction over J.A.F.D.; (3) the trial court failed to properly conduct a hearing as required by section 7B-1108(b) of the North Carolina General Statutes; (4) the trial court committedplain error in excessively questioning her; and (5) the trial court erred in denying her motion to dismiss.
First, the mother argues that the trial court lacked personal jurisdiction over her as there was no return of service of the summons and petition upon her. We disagree.
At trial, the mother failed to object to service of process or the return of service. She also never raised the issue of jurisdiction over her person. Rule 12(h) of the North Carolina Rules of Civil Procedure requires that an objection to jurisdiction over the person must be made in open court before proceeding, or at the earliest possible motion or pleading opportunity, or be deemed waived. N.C. Gen. Stat. § 1A-1, Rule 12(h)(1) (2003). As the mother made no such objection, this defense is deemed waived.
The mother next argues that the trial court lacked subject-matter jurisdiction over J.A.F.D. because service of the summons and petition was not completed upon the minor as required by section 7B-1106(a) of the North Carolina General Statutes. We disagree.
Section 7B-1101 of the North Carolina General Statutes grants subject-matter jurisdiction to the district courts.
The court shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion.
N.C. Gen. Stat. § 7B-1101 (2003). As DSS has custody of both minor children, the court had subject-matter jurisdiction.
Next, the mother argues that the trial court failed to properly conduct a hearing as required by section 7B-1108(b) of the North Carolina General Statutes. We disagree.
"The court shall conduct a special hearing after notice . . . given by the petitioner or movant to the respondent who answered or responded, and the guardian ad litem for the juvenile to determine the issues raised by the petition and answer or motion and response." N.C. Gen. Stat. § 7B-1108(b) (2003). The trial court held the hearing on 2 July 2003 immediately proceeding the termination of parental rights hearing. The trial court determined that respondents denied most of the complaint and the issues could not be narrowed. As the trial court properly held the required hearing, we find no error.
Next, the mother argues that the judge committed plain and prejudicial error in excessively questioning her. We disagree.
At trial, the mother did not object to the questioning by the court. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion." N.C. R. App. P. 10(b)(1). The mother asserts plain error, however plain error is only applicable in criminal cases. N.C. R. App. P. 10(c)(4). Therefore, this issue is not properly before this Court.
The mother lastly argues that the trial court erred in denying her motion to dismiss and in concluding that grounds existed toterminate her parental rights when DSS based its case on prior neglect and termination was not in the best interest of the minors. We disagree.
There are two stages involving a petition to terminate parental rights: adjudication and disposition. At the adjudication stage, the petitioner has the burden of proving by clear, cogent and convincing evidence that at least one statutory ground for termination exists. In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173-74 (2001); see N.C. Gen. Stat. § 7B-1109(f) (2003) (requiring findings of fact to be based on clear, cogent, and convincing evidence). A finding of one statutory ground is sufficient to support the termination of parental rights. In re Pierce, 67 N.C. App. 257, 261, 312 S.E.2d 900, 903 (1984). Upon so finding, the trial court proceeds to the disposition stage, where it determines whether termination of parental rights is in the best interest of the child. McMillon, 143 N.C. App. at 408, 546 S.E.2d at 174. On appeal, this Court reviews whether the trial court's findings of fact are supported by clear, cogent and convincing evidence, and whether those findings support the trial court's conclusions of law. Id. at 408, 546 S.E.2d at 174. If the decision is supported by such evidence, the trial court's findings are binding on appeal, even if there is evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).
The petitioner alleged three grounds for termination: (1) neglect; (2) leaving the minor children in foster care for twelvemonths without a showing of progress; and (3) failure to pay child support while the minor children were in foster care. The mother argues that there were insufficient grounds for a finding of neglect, a probability of continuation of neglect, and that she had not showed reasonable progress in correcting the conditions, because all of petitioner's evidence occurred prior to the petition.
[I]n ruling upon a petition for termination of parental rights for neglect, the trial court may consider neglect of the child by its parents which occurred before the entry of a previous order taking custody from them. This is so even though the parents have not had custody of the child from the time of the prior custody order until the time of the termination proceeding. Therefore, a prior adjudication of neglect may be admitted and considered by the trial court in ruling upon a later petition to terminate parental rights on the ground of neglect.
In re Ballard, 311 N.C. 708, 713-14, 319 S.E.2d 227, 231 (1984). However, "[t]ermination of parental rights for neglect may not be based solely on past conditions which no longer exist." In re Young, 346 N.C. 244, 248, 485 S.E.2d 612, 615 (1997). A neglected minor is defined as, "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent." N.C. Gen. Stat. § 7B-101(15) (2003).
The mother asserted that she had been drug free for one year, had completed a drug treatment program, had attended narcotics anonymous meetings, and had lived in a well-kept home, as evidence that neglect would not continue. However, she had been out of jail for only approximately four months and had no attendance logs ofher narcotics anonymous meetings. Additionally, she did not stop using drugs until she went to jail, where she then took advantage of a treatment program. Countering the mother's assertions, the petitioner presented a long history of drug abuse and multiple criminal convictions. Although the mother had been drug and jail free for four months, there was clear, cogent, and convincing evidence that her drug abuse could relapse and she would continue not to provide proper care and supervision of the minors. See Williamson, 91 N.C. App. at 674, 373 S.E.2d at 320. Therefore, the trial court's findings of fact support a conclusion of neglect as a grounds for termination of parental rights pursuant to section 7B-1111(a)(1) of the North Carolina General Statutes. Also, the mother had not submitted the three negative drug tests or obtained the psychological evaluation as required by a previous court order. Clearly she had not corrected all the conditions that led to removal and, thus, termination was proper pursuant to section 7B-1111(a)(2) of the North Carolina General Statutes. Consequently, we find no error by the trial court.
The mother next contends that the trial court erred in finding sufficient grounds for termination based on failing to pay child support for the preceding six months pursuant to section 7B-1111(a)(3) of the North Carolina General Statutes. We disagree.
First, we note that the mother made no argument for this ground in her brief. The court may terminate the parental rights if,
[t]he juvenile has been placed in the custody of a county department of social services, . .. and the parent, for a continuous period of six months next preceding the filing of the petition or motion, has willfully failed for such period to pay a reasonable portion of the cost of care for the juvenile although physically and financially able to do so.
N.C. Gen. Stat. § 7B-1111(a)(3) (2003). Here, the mother had made no support payments to DSS in the preceding year despite the fact that she was physically and financially capable of doing so. The mother had been released from jail for four months prior to the hearing. She worked part-time and also owned a house she and her husband had inherited free from encumbrances. However, no portion of her part-time salary was given in support of the minors. Also, the mother could have used the house as an asset to gain money for the support payments. As there is no argument to the contrary, we find there was clear, cogent, and convincing evidence that the mother had failed to provide financial support for the minors even though she was physically and financially able to do so. See Williamson, 91 N.C. App. at 674, 373 S.E.2d at 320. Accordingly, we find no error.
Finally, the mother contends that the trial court erred in denying her motion to dismiss as termination was not in the best interest of the minors. We disagree.
Once the trial court determines that one or more grounds exist to terminate the parental rights of the respondent, the court must then proceed to the disposition stage.
Should the court determine that any one or more of the conditions authorizing a termination of the parental rights of a parent exist, the court shall issue an order terminating the parental rights of such parentwith respect to the juvenile unless the court shall further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated.
N.C. Gen. Stat. § 7B-1110(a) (2003). The trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard. In re Yocum, 158 N.C. App. 198, 206, 580 S.E.2d 399, 404 (2003).
The evidence reflects that the mother demonstrated a pattern of neglect toward the minors, which included a long history of drug abuse, and DSS maintained that she could not care for the minors. It was well within the trial court's discretion to conclude that the minor's best interests would be served by terminating the mother's parental rights so that adoption could take place. We therefore hold that the trial court did not abuse its discretion in terminating the mother's parental rights.
In his appeal, the father argues that: (1) the trial court committed plain and prejudicial error in denying his counsel a request for a continuance; (2) the trial court improperly found grounds for terminating his parental rights based on his incarceration; and (3) the trial court committed plain error in excessively questioning him.
First, the father argues that the trial court committed plain and prejudicial error in denying his counsel a request for a continuance to allow the incarcerated father a chance to attend the hearing since no writ had been issued for his appearance. We disagree. "When . . . a parent is absent from a termination proceeding and the trial court preserves the adversarial nature of the proceeding by allowing the parent's counsel to cross examine witnesses, with the questions and answers being recorded, the parent must demonstrate some actual prejudice in order to prevail upon appeal." In re Murphy, 105 N.C. App. 651, 658, 414 S.E.2d 396, 400 (1992). Here, the trial court delayed the hearing until the afternoon in an attempt to allow more time for the father to attend. The father was aware of the hearing and made no attempt to contact his attorney to notify her that he had been transferred to a different prison. Also, his attorney had not filed a writ to appear. The father's attorney was present through the entire proceeding and the father was afforded the opportunity to testify at the end of the hearing after he arrived. The father has failed to produce any evidence of prejudice. Id. Accordingly, we find no error.
Next, the father contends that the trial court improperly found grounds for terminating his parental rights based on his incarceration. We disagree.
The father argues that he made efforts to eliminate his drug abuse while in prison, and any other possible compliance with court requirements, contact with minor or financial support of minor, were not possible due to his incarceration. The father does not attack a specific finding of fact by the trial court but simply makes a generalized argument. Therefore, our review is limited to whether the facts support the court's judgment. Hicks v. Russell, 256 N.C. 34, 39, 123 S.E.2d 214, 218 (1961). We hold that the trial court's findings of fact do support a finding of neglect needed to terminate parental rights.
The requirements for a finding of neglect to terminate parental rights pursuant to section 7B-1111(a)(1) of the North Carolina General Statutes have been stated above. Here, the trial court found that the father had failed to provide love, comfort, or support for the minor and that there was a reasonable probability of continuing neglect as the father has continuously failed to comply with court ordered conditions. The father had been continuously jailed since April 2002 on drug related charges, had made no support payments, had made no attempt to contact the minor, and had presented no negative drug tests as ordered by the court. These facts taken together support the trial court's determination that further neglect was probable as the father has failed to provide proper care and supervision pursuant to section 7B-1111(a)(1) of the North Carolina General Statutes. Therefore, we find no error.
Finally, the father argues that the trial court committed plain and prejudicial error in excessively questioning him. We disagree.
The father did not object to the questioning by the court at trial. "In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion." N.C. R. App. P. 10(b)(1). The father asserts plain error; however, as stated previously plain error is applicable only in criminal cases. N.C. R. App. P. 10(c)(4). Therefore, this issue is not properly before this Court.
Affirmed.
Judges HUNTER and THORNBURG concur.
Report per Rule 30(e).