IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-1129

Filed: 17 November 2020

Buncombe County, No. 17 JA 326

IN THE MATTER OF: L.G.

Appeal by Respondent-Mother from orders entered 9 September 2019 by Judge

Andrea F. Dray in Buncombe County District Court. Heard in the Court of Appeals

3 November 2020.

*John C. Adams for petitioner-appellee Buncombe County Department of Health and Human Services.*

*Jackson M. Pitts for guardian ad litem-appellee.*

*Vitrano Law Offices, PLLC, by Sean P. Vitrano, for respondent-appellant mother.*

MURPHY, Judge.

Respondent-Mother, Sam,[1] challenges the trial court's denial of her motion to

continue when she was not present and unable to testify on her own behalf at a

permanency planning and review hearing. Sam appeals from the trial court's orders

awarding guardianship pursuant to a primary permanency plan to the paternal

grandparents of the minor child, Wanda, and dissolving the trial court's jurisdiction

of this matter.

---

[1] We use pseudonyms for all relevant persons throughout this opinion to protect the juvenile's identity and for ease of reading.

In a permanency planning and review hearing regarding an abused and neglected child's placement, a trial court does not abuse its discretion when it denies to continue the hearing when the mother is not present and there was no request by the mother's counsel for time to allow counsel to contact the mother. Where a trial court orders a juvenile's placement to be with a person other than a parent, the trial court meets the statutory requirements when it makes written findings regarding whether it is possible for the juvenile to be placed with a parent within the next six months, and if not, why placement is not in the juvenile's best interest. A trial court abuses its discretion when these findings are not included in a permanency planning hearing order. Finally, when a trial court dissolves jurisdiction in a matter, it must make a finding the juvenile has resided in the placement for a period of at least one year.

## **BACKGROUND**

Wanda was born in March 2015 and is the only child of Sam and Respondent-Father, Peter, who are married. During the course of these proceedings, Sam and Peter have both struggled with substance abuse.

On 19 August 2017, Peter placed Wanda in his car at approximately 1:30 a.m., intending to drive to the store. He instead re-entered their residence and passed out due to his ingestion of Xanax, a benzodiazepine for which he did not have a prescription. Two-year-old Wanda remained alone in the car and strapped in her car

seat until she was found the next morning at 7:00 a.m. On 12 October 2017, Buncombe County Department of Health and Human Services ("DHHS") filed a juvenile petition alleging Wanda was abused and neglected. In addition to describing Sam and Peter's substance abuse and its effects on Wanda, the petition alleged Sam was facing eviction and lacked safe and stable housing.

At a hearing on 13 December 2017, Sam and Peter stipulated to the petition's material allegations and to the stipulated allegations supporting the conclusion Wanda was an abused and neglected juvenile. The trial court entered an order on 9 February 2018 adjudicating Wanda to be abused and neglected and maintaining her in a temporary safety placement.[2] The trial court ordered Sam and Peter to participate in parenting education courses and to "continue to engage in substance abuse treatment to obtain an abstinence based recovery," submitting to random drug screens, completing detox and inpatient treatment, and complying with all recommendations of their treatment providers. Sam was granted weekly supervised visitation with Wanda.

The trial court held an initial permanency planning hearing on 28 February 2018 and established a primary permanent plan for Wanda of preventing an out-of-home placement with a secondary permanent plan of reunification. The trial court

---

[2] Although the decretal portion of the trial court's order purports to place Wanda in DHHS custody, the remainder of the order and the court's subsequent orders reveal this to be a scrivener's error. Prior to placing Wanda in guardianship with her paternal grandparents in September 2019, the trial court left Wanda in Sam and Peter's custody subject to a "temporary safety placement."

maintained these permanent plans through four subsequent permanency hearings ending on 6 February 2019, keeping Wanda in a temporary safety placement as Sam and Peter worked toward attaining sobriety. Between 3 and 16 August 2018, Wanda was transitioned out of her maternal grandmother's home into a temporary safety placement with her paternal grandmother.

Beginning in September 2018, Sam was granted unsupervised visits with Wanda, eventually progressing to sixteen hours per week of unsupervised visitation. Following a sixth permanency planning review hearing on 1 May 2019, the trial court changed the primary permanent plan to reunification and established a secondary plan of guardianship. The trial court authorized Sam and Peter to have unsupervised overnight visitations with Wanda in their home at the discretion of the Child and Family Team. All unsupervised visits were then suspended by DHHS in June 2019, following Sam's use of alcohol while caring for Wanda.

The trial court held the next permanency planning hearing on 30 July 2019 and entered the resulting *Subsequent Permanency Planning and Review Order* ("permanency planning order") on 9 September 2019. Based on the parties' evidence and the recommendations of DHHS and the guardian ad litem ("GAL"), the trial court changed Wanda's primary permanent plan to guardianship and her secondary plan to reunification. The trial court appointed the paternal grandmother and her husband as Wanda's guardians. The trial court also awarded Sam and Peter two

hours of weekly supervised visitation but authorized the guardians to deny visitation if either Sam or Peter appeared to be intoxicated. Simultaneous to its entry of the permanency planning order on 9 September 2019, the trial court entered a *Guardianship Order* confirming Wanda's placement in the legal guardianship of her paternal grandparents. Sam filed timely notice of appeal from the *Subsequent Permanency Planning and Review Order* and *Guardianship Order* on 19 and 20 September 2019.

## ANALYSIS

### A. Denial of Continuance

Sam first argues the trial court abused its discretion by denying her oral motion to continue the 30 July 2019 permanency planning hearing based on her absence from the proceeding. We disagree.

"Ordinarily, a motion to continue is addressed to the discretion of the trial court, and absent a gross abuse of that discretion, the trial court's ruling is not subject to review."[3] *In re A.L.S.*, 374 N.C. 515, 516-17, 843 S.E.2d 89, 91 (2020) (quoting *State v. Walls*, 342 N.C. 1, 24, 463 S.E.2d 738, 748 (1995)). To prevail on appeal, Sam must demonstrate "the court's ruling is manifestly unsupported by reason or is so

---

[3] Sam's counsel did not assert a continuance was necessary to protect a constitutional right. *See In re A.L.S.* 374 N.C. at 517, 843 S.E.2d at 91 (noting if "the motion is based on a right guaranteed by the Federal and State Constitutions, the motion presents a question of law and the order of the court is reviewable"); *In re C.M.P.*, 254 N.C. App. 647, 653, 803 S.E.2d 853, 857 (2017) ("[R]espondent's motion to continue was not based on a constitutional right, and we review the trial court's denial of the motion for abuse of discretion.").

arbitrary that it could not have been the result of a reasoned decision." *In re C.J.C.*, 374 N.C. 42, 47, 839 S.E.2d 742, 746 (2020) (quoting *In re A.R.A.*, 373 N.C. 190, 199, 835 S.E.2d 417, 423 (2019)). She must also show she "suffered prejudice as a result of the error." *In re A.L.S.*, 374 N.C. at 517, 843 S.E.2d at 91 (quoting *Walls*, 342 N.C. at 24-25, 463 S.E.2d at 748). "Continuances are not favored and the party seeking a continuance has the burden of showing sufficient grounds for it. The chief consideration is whether granting or denying a continuance will further substantial justice." *In re Humphrey*, 156 N.C. App. 533, 538, 577 S.E.2d 421, 425 (2003) (citation omitted).

The transcript of the 30 July 2019 permanency planning hearing shows Sam's counsel made an oral motion to continue due to Sam's absence. Noting Sam had consistently attended all court proceedings, Sam's counsel advised the trial court as follows:

> Recently, [Sam] has had some issues, and she emailed me yesterday letting me know that she had checked into Pardee [Hospital]. She intends to go from there into a rehab facility. But given the [DHHS and GAL] reports that are in front of the [c]ourt and the requests and recommendations, I am asking the [c]ourt to continue this matter. [4]
>
> My client has received copies of the report[s], but given how we received them, she just got them . . . and has not been able to communicate back to me any – anything about her

---

[4] In their reports filed on 24 July 2019 and admitted into evidence without objection, DHHS and the GAL recommended changing Wanda's primary permanent plan to guardianship and appointing her paternal grandmother as guardian.

comments on them or regarding the recommendations. But given that the [c]ourt is being asked today to close, I would ask that the matter be held op[en] or continued over so my client can participate today since I won't be able to represent what she would desire, based on the reports.

DHHS, Peter, the GAL, and the paternal grandmother objected to a continuance. DHHS reported it had not received confirmation of Sam's enrollment in inpatient substance abuse treatment. Reminding the trial court Wanda had been "out of home for [twenty-one[5]] months," the GAL confirmed "we would be asking for guardianship to be granted to these paternal grandparents" even if Sam was present for the hearing. The paternal grandmother argued Sam "had the opportunity to admit herself into a treatment program" when her relapse first came to light in mid-June 2019 and yet waited until the eve of the hearing to do so.

In denying Sam's motion, the trial court observed the case had been "before the Court now for [twenty-three] months," and pointed to the amount of information contained in the court file and in the reports submitted by DHHS and the GAL. The trial court proceeded to hear testimony from the family's START social worker and Wanda's paternal grandparents. Sam's counsel actively participated in the hearing, cross-examining the social worker and the paternal grandmother.

Sam has failed to carry her burden to show the trial court abused its discretion when it denied her motion to continue. The purpose of a permanency planning

---

[5] The Record shows Wanda entered a temporary emergency placement with maternal grandmother in September 2017, more than twenty-three months before the 30 July 2019 hearing.

hearing is to identify the "best permanent plans to achieve a safe, permanent home for the juvenile" consistent with the juvenile's best interest. N.C.G.S. § 7B-906.1(g), (i) (2019); *see also* N.C.G.S. § 7B-906.2(a) (2019). Sam's counsel made no proffer, other than Sam's absence, tending to suggest a continuance would further the cause of identifying the appropriate permanent plan for Wanda. *See In re A.L.S.*, 374 N.C. at 518, 843 S.E.2d at 92 (noting "counsel offered only a vague description of the [absent witness's] expected testimony and did not tender an affidavit or other offer of proof to demonstrate its significance"). Although Sam's counsel stated she had not received her client's "comments" about the reports filed by DHHS and the GAL, there was no suggestion Sam intended to dispute any of the information contained in the reports or the court file.

Moreover, the mere fact Sam was not present for the hearing is not *per se* prejudicial. *See In re C.M.P.*, 254 N.C. App. 647, 653, 803 S.E.2d 853, 857 (2017); *see also In re Murphy*, 105 N.C. App. 651, 658, 414 S.E.2d 396, 400 ("When . . . a parent is absent from a termination proceeding and the trial court preserves the adversarial nature of the proceeding by allowing the parent's counsel to cross examine witnesses, with the questions and answers being recorded, the parent must demonstrate some actual prejudice in order to prevail upon appeal."), *aff'd per curiam*, 332 N.C. 663, 422 S.E.2d 577 (1992). Sam's counsel advocated for Sam's interests in an effective manner. *See Murphy*, 105 N.C. App. at 658, 414 S.E.2d at 400 (holding the

respondent "failed to produce any evidence of prejudice" resulting from his absence from hearing to terminate his parental rights).

Sam argues her "testimony was necessary to clarify her physical and mental and emotional state, which was in turn necessary" for the trial court to determine whether Wanda could be permanently returned to Sam's care "within a reasonable period of time" under N.C.G.S. § 7B-906.1(d)(3), or whether it was possible to place Wanda with Sam within the next six months as contemplated by N.C.G.S. § 7B-906.1(e)(1). However, when making the oral motion, Sam's counsel did not indicate Sam intended to testify; nor did counsel offer a forecast of Sam's potential testimony. *See Murphy*, 105 N.C. App. at 655, 414 S.E.2d at 399 ("During the hearing, respondent's attorney did not argue that his client would be able to testify concerning any defense to termination, nor did he indicate how his client would be prejudiced by not being present."). Sam's counsel's representation that Sam had just entered an inpatient substance abuse treatment facility appeared to foreclose the prospect of Wanda's reunification with her mother in the near future.[6] "[Sam] thus fails to demonstrate any prejudice arising from the trial court's denial of her motion to continue." *In re A.L.S.*, 374 N.C. at 518, 843 S.E.2d at 92.

Sam also cites our holding in *In re D.W.*, 202 N.C. App. 624, 693 S.E.2d 357

---

[6] Sam's counsel later acknowledged Sam was "struggling" and averred she had entered inpatient substance abuse treatment "as of yesterday" with "a plan going forward to go to ADATC from there, and then her intention is to go to Abba House."

(2010) to support her argument. In *In re D.W.*, we held the trial court abused its discretion by denying the respondent's motion to continue a termination of parental rights hearing based on the respondent's absence. *Id.* at 629, 693 S.E.2d at 360. *In re D.W.* noted a confluence of factors justifying the continuance, none of which were present here:

> First, [r]espondent notes that it was unclear whether she received notice of the hearing. . . . Furthermore, the [R]ecord indicates that the trial court was on notice that [r]espondent suffered from diminished capacity, possibly making her absence involuntary. . . . Also, it was apparent from the transcript that external time constraints negatively affected the nature of the proceeding in such a manner as might have been avoided through the issuance of a continuance. Lastly, we are troubled by the trial court's failure to ascertain the nature of the proceeding prior to issuing a ruling on a motion to continue . . . .

*Id.* at 628, 693 S.E.2d at 360. *In re D.W.* is inapposite and the trial court did not abuse its discretion in denying Sam's motion to continue. *Id.*

## B. Lack of Findings under N.C.G.S. § 7B-906.1(e)(1)

Sam argues the trial court erred by establishing a guardianship for Wanda without "consider[ing] and mak[ing] written findings regarding '[w]hether it is possible for the juvenile to be placed with a parent within the next six months and, if not, why such placement is not in the juvenile's best interests[,]'" as required by N.C.G.S. § 7B-906.1(e)(1). We agree.

Where the trial court does not place the juvenile with a parent following a permanency planning hearing, N.C.G.S. § 7B-906.1(e)(1) requires the trial court to enter findings of fact regarding, *inter alia*, "[w]hether it is possible for the juvenile to be placed with a parent within the next six months and, if not, why such placement is not in the juvenile's best interests." N.C.G.S. § 7B-906.1(e)(1) (2019). "The trial court's findings must explain 'why [Wanda] could not be returned home immediately or within the next six months, and why it is not in [her] best interests to return home.'" *In re J.H.*, 244 N.C. App. 255, 273, 780 S.E.2d 228, 241 (2015) (quoting *In re I.K.*, 227 N.C. App. 264, 275, 742 S.E.2d 588, 595-96 (2013)).

As a general matter, "[o]ur review of a permanency planning order entered pursuant to N.C.[G.S.] § 7B-906.1 is 'limited to whether there is competent evidence in the record to support the findings and whether the findings support the conclusions of law.'" *In re J.S.*, 250 N.C. App. 370, 372, 792 S.E.2d 861, 863 (2016) (quoting *In re J.H.*, 244 N.C. App. at 268, 780 S.E.2d at 238). The trial court's findings of fact "are conclusive on appeal when supported by any competent evidence, even if the evidence could sustain contrary findings." *In re L.T.R.*, 181 N.C. App. 376, 381, 639 S.E.2d 122, 125 (2007) (internal quotation marks omitted). We have characterized a trial court determination of a juvenile's best interest as a conclusion of law which must be supported by its findings of fact. *In re Helms*, 127 N.C. App. 505, 510-11, 491 S.E.2d 672, 676 (1997); *see also In re Chasse*, 116 N.C. App. 52, 62, 446 S.E.2d 855, 861 (1994

("When making a disposition or reviewing one, a trial court must enter an order with findings sufficient to show that it considered the best interest of the child.").

The permanency planning order here makes no mention of the possibility of Wanda's placement with either parent within the next six months. However, the trial court's contemporaneously-entered *Guardianship Order* includes the following finding:

> 12. [Wanda] has been placed with her paternal grandparents, since August of 2018, and it is in [Wanda's] best interest that she be placed in the legal guardianship of them, as they are committed to caring for [Wanda] and being her legal guardian[s], and as it is unlikely [Sam and Peter] will be able to care for [Wanda] within the next six months.

The permanency planning order includes the following findings of fact supporting the trial court's assessment:

> 27. On [13 June 2019], the Department became aware that [Sam] had relapsed on alcohol and had been drinking in the home the night before, while [Wanda] was there and being cared for by [Peter]. It was reported that [Sam and Peter], with [Wanda], arrived at the home of paternal grandmother to put the child to bed, on [12 June 2019], and that [Sam] was under the influence of alcohol. A decision was made to return to only supervised time between [Wanda] and both [Sam and Peter], until further notice.
>
> 28. On [20 June 2019], an emergency meeting was called to talk about the new concerns and make a plan moving forward. . . . The team agreed that [Sam] would need to take action regarding her relapse and recent use, in order to move back towards unsupervised time with [Wanda]. [Sam] acknowledged her use of alcohol, and apologized for

her behavior and choices. It was decided that [DHHS] would hold a similar meeting with [Peter] at a later time.

29. On [28 June 2019], the social worker stopped by the apartment of [Sam and Peter] as the social worker had not had further contact with [Peter]. He reported that on this date, [Sam] would no longer be allowed to live in the apartment. He reported that she may have a place to live temporarily in Henderson County. [Peter] reported that he believes that his marriage is over, and that he has had concerns for some time that [Sam] has been drinking alcohol. . . .

. . .

31. [Sam] completed an updated Comprehensive Clinical Assessment to identify any new or additional treatment needs at Women's Recovery Center. It was recommended that she continue her MAT services and also attend weekly individual therapy. [Sam] started her individual therapy sessions on [8 July 2019] . . . .

. . .

33. On or about [12 July 2019], [Sam] moved into Biltmore Housing, in a Half Way/Sober Living home. She moved out about [14 July 2019], due to not feeling like the home was a good fit.

. . .

35. On [19 July 2019], the social worker learned from paternal grandmother that [Sam] did not make her visitation with [Wanda] on [18 July 2019]. It was reported that on [18 July 2019], [Sam] contacted the paternal grandmother and [Sam] may have been intoxicated, was in a bad emotional state, and was alone in her car. The social worker followed up with [Sam] the next day who reported

that she quit her new job, and was waiting to coordinate an admission into detox and inpatient rehab through the Behavioral Health Urgent Care or Crossroads.

36.    [Sam and Peter] were required to complete 8 random drug screens with [DHHS].  [Peter] missed three screens, had 1 negative for illicits but was with abnormal creatine and non-prescribed Gabapentin, had 1 negative but was with abnormal creatine, had two that were negative for illicits but were with non-prescribed Gabapenti[n], and had 1 (oral) which was positive for Fentanyl, Norfentanyl, Cocaine, and Cocaine Metabolite.

. . .

38.    [Sam] missed 1 screen, had three that were negative/normal, had 2 (1 oral and 1 urine) [that] were positive for Fentanyl, and had two that were positive for alcohol and/or cocaine.

39.    Several screens were positive for prescribed Gabapentin. [Sam] does admit alcohol use.  She has reported no use of Fentanyl, and no knowledge of coming into contact with this substance that could lead to a positive test.

. . .

41.    [Wanda's] GAL concludes that [Wanda] is a bright young girl living in a safe and secure environment with her paternal grandparents.

. . .

45.    [Sam] has had numerous positive screens and missed screens since June of 2019.  [Peter] has had numerous positive screens and failed screens since June of 2019.  [Sam] has visited regularly, up until about two

weeks ago. [The social worker] has not spoken to [Sam] since last week, and has received no confirmation that [Sam] is in treatment. [Peter] continues to be involved with Crossroads and with a START program, but he continues to test positive. . . .

46.    [Peter] is in favor of the submitted recommendations.

. . .

48.    The paternal grandparents reside in a two bedroom apartment in Buncombe County, in which [Wanda] has her own bedroom. They have no impairments and/or health concerns that would impede their care for [Wanda]. Their monthly income is approximately 20,000 dollar[s] . . ., and as such, their income exceeds their liabilities. [Wanda] will have been in their home for one year, as of [3 August 2019]. . . . [Sam] has missed 3 consecutive visits and has called the paternal grandmother, severely intoxicated. [Sam] has presented for visits, impaired, with [Wanda]. . . . .

. . .

51.    Pursuant to N.C.G.S. § 7B-903(a)(2)(c), the paternal grandparents . . . are aware of the legal responsibilities of accepting legal guardianship of [Wanda] and they are willing and able to provide proper care and supervision of [Wanda] in a safe environment.

52.    Pursuant to N.C.G.S. § 7B-906(b), [Wanda] is placed with the paternal grandparents, . . . and this placement is stable, and the continuation of the placement is in [her] best interest.

53.    It is in the best interest of [Wanda] that [s]he be placed in the legal guardianship of the paternal grandparents . . . at this time.

Sam does not challenge any of these findings of fact so they are presumed to be supported by competent evidence and binding on appeal. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991).

We hold while the trial court included findings of fact in the permanency planning order that could support a potential conclusion it was not possible for Wanda to be placed with Sam or Peter within six months, it failed to make that conclusion of law in the permanency planning order. We remand this matter for the trial court's consideration of this issue and if the trial court so concludes, to include specific language regarding the possibility of Wanda being placed with a parent within six months in the permanency planning order.[7]

### C. Waiver of Further Hearings

Lastly, Sam argues the trial court erred by waiving further permanency planning hearings pursuant to N.C.G.S. § 7B-906.1(n) and by "dissolv[ing]" its jurisdiction and releasing DHHS, the GAL, and counsel from further responsibility in the case effective 3 August 2019. DHHS and the GAL concede these errors and recognize the need to remand this cause to the trial court for correction thereof.

---

[7] In its brief, the GAL maintains this matter "should be remanded to correct the trial court's error in failing to include specific language that it is not possible for [Wanda] to be placed with a parent within six months. However, the GAL-Appellee contends that the findings of fact already contained in the subject permanency planning order are sufficient to support a conclusion that it is not possible for [Wanda] to be placed with [Sam] within six months." While we agree with the GAL it could support such a conclusion, on remand the trial court is free to enter a conclusion of law it finds appropriate and we do not dictate such a conclusion is mandated by the findings of fact.

N.C.G.S. § 7B-906.1(n) authorizes the trial court to waive periodic permanency planning hearings if the trial court finds by clear and convincing evidence each of the following:

> (1) The juvenile has resided in the placement for a period of at least one year or the juvenile has resided in the placement for at least six consecutive months and the court enters a consent order pursuant to [N.C.]G.S. 7B-801(b1).
>
> (2) The placement is stable and continuation of the placement is in the juvenile's best interests.
>
> (3) Neither the juvenile's best interests nor the rights of any party require that review hearings be held every six months.
>
> (4) All parties are aware that the matter may be brought before the court for review at any time by the filing of a motion for review or on the court's own motion.
>
> (5) The court order has designated the relative or other suitable person as the juvenile's permanent custodian or guardian of the person.

N.C.G.S. § 7B–906.1(n)(1-5) (2019).

Here, the trial court found Wanda would have resided in her current placement for one year as of 3 August 2019, four days after the 30 July 2019 hearing date. The trial court purported to waive further hearings and terminate its jurisdiction as of the anniversary date, decreeing as follows:

> 12. That [Wanda] will have been in the home of the paternal grandparents for one year, beginning on [3 August 2019]; and, that on that date, jurisdiction of this Court over

such person shall dissolve.

13.     That this cause shall need not be brought back on for review in [the] normal course unless requested by any party hereto.

14.     That, on [3 August 2019], this cause shall be removed by the [c]lerk of [c]ourt from the juvenile docket, and [DHHS], and all court-appointed representatives shall be released from further responsibility in this cause.

We agree with the parties that the trial court erred in this regard. The trial court had no authority to waive further hearings in this matter because Wanda had not been residing in her current placement for at least one year at the time of the permanency planning hearing. *See In re J.H.*, 244 N.C. App. at 278, 780 S.E.2d at 244; *In re P.A.*, 241 N.C. App. 53, 66, 772 S.E.2d 240, 249 (2015). Furthermore, the trial court's purported decision to terminate or "dissolve" its own jurisdiction effective 3 August 2019 is inconsistent with its findings elsewhere in the order acknowledging the parties' right to file a motion in the cause for review. The permanency planning order contains the following findings of fact, conclusions of law, and decrees:

61.     Pursuant to N.C.G.S. § 7B-905.1(d), any party may file a motion for review to address the current visitation plan.

. . .

15.     That, pursuant to N.C.G.S. § 7B-905.1(d), any party may file a motion for review to address the current visitation plan.

. . .

17.    That pursuant to § 7B-201, [Wanda] will have been in the home of the paternal grandparents for one year, beginning on [3 August 2019]; therefore, jurisdiction of this [c]ourt over such person will dissolve on that date. This cause need not be brought back on for review in [the] normal course unless requested by any party hereto, and upon the attainment of such date, this cause may be removed by the [c]lerk of [c]ourt from the juvenile docket, and [DHHS], and all court-appointed representatives should be released from further responsibility in this cause.

. . .

12.    That [Wanda] will have been in the home of the paternal grandparents for one year, beginning on [3 August 2019]; and, that on that date, jurisdiction of this [c]ourt over such person shall dissolve.

13.    That this cause shall need not be brought back on for review in [the] normal course unless requested by any party hereto.

*See generally* N.C.G.S. § 7B-201(b) (2019) ("When the [juvenile] court's jurisdiction terminates, whether automatically or by court order, the court thereafter shall not modify or enforce any order previously entered in the case . . . ."). The trial court's decision is also at odds with its finding and conclusion that "[t]he conditions that caused [DHHS] to become involved in this matter have not yet been addressed, and ceasing [S]tate involvement would be contrary to the health and safety of [Wanda] at

this time[,]" as well as its oral statement at the conclusion of the hearing that "[t]his [c]ourt does retain jurisdiction."[8]

Finally, because the trial court's order established reunification as the secondary permanent plan, "[Sam] continued to have the right to have [DHHS] provide reasonable efforts toward reunifying [Wanda] with her, and the right to have the court evaluate those efforts." *In re C.S.L.B.*, 254 N.C. App. 395, 398, 829 S.E.2d 492, 494 (2017). Accordingly, we remand this matter to the trial court to correct the failure to satisfy the requirement set forth in N.C.G.S. § 7B-906.1(n)(1) and the failure of the trial court to retain jurisdiction and for DHHS to continue reunification efforts in this matter.

## **CONCLUSION**

We affirm the trial court's denial of Sam's motion to continue. We remand to the trial court to address its error in failing to conclude and, if appropriate, include specific language in the *Subsequent Permanency Planning and Review Order* that it is not possible for Wanda to be placed with a parent within six months. Further, we remand to the trial court to correct the failure to satisfy the requirement set forth in N.C.G.S. § 7B-906.1(n)(1) and the failure to retain jurisdiction of this matter, and for DHHS to continue further efforts of reunification.

---

[8] We note the trial court did not convert the proceeding into a child custody action under N.C.G.S. Chapter 50 pursuant to N.C.G.S. § 7B-911.

REMANDED.

Judges TYSON and HAMPSON concur.