IN THE MATTER OF: JOSEPH CHASSE, DOB: 6/23/83

No. 9314DC203

(Filed 16 August 1994)

1. **Evidence and Witnesses § 2170 (NCI4th)— expert testimony from psychologist excluded—lack of clinical experience—exclusion improper—no substantial right violated**

     In a hearing to determine whether a sexually abused child should be allowed supervised visits with the parents and whether the child should be moved from Durham to Cumberland County, the trial court erred in excluding testimony by a psychologist con-

cerning adult sex offender therapy because the witness had no clinical experience, since the witness's acknowledged expertise in the field of adolescent sex offenders and his study of all the psychological literature, including articles on treatment of adult sexual offenders, made him better qualified than the trial court to render an opinion on the length and efficacy of adult sexual offender therapy; however, exclusion of this evidence did not amount to the denial of a substantial right, and appellant guardian was therefore not entitled to a new hearing.

**Am Jur 2d, Expert and Opinion Evidence §§ 32 et seq.**

2. **Evidence and Witnesses § 2041 (NCI4th)— sexually abused child—testimony of therapist excluded—cumulative evidence—exclusion proper**

In a hearing to determine whether a sexually abused child should be allowed supervised visitation with his parents and whether he should be moved from Durham to Cumberland County, the trial court did not err in refusing to allow the child's therapist to testify concerning her therapy session with the child following the child's in-court revelation of an incident of sexual abuse at his group home in Durham, since that testimony would have been cumulative.

**Am Jur 2d, Evidence, §§ 355, 356; Expert and Opinion Evidence § 5.**

3. **Infants or Minors § 120 (NCI4th)— sexually abused child—visitation with parents sought—visitation allowed in courthouse—no error**

In a hearing to determine whether a sexually abused child should be allowed supervised visitation with his parents, the trial court did not err in allowing the child to visit with his parents in the courthouse, since the governing standard was not change of circumstances but the best interest of the child, and the guardian showed no harm or prejudice to the child or his case arising out of the visit.

**Am Jur 2d, Infants §§ 16, 43.**

**Validity and application of statute allowing endangered child to be temporarily removed from parental custody. 38 ALR4th 756.**

IN RE CHASSE

[116 N.C. App. 52 (1994)]

### 4. Infants or Minors § 128 (NCI4th)— sexually abused child— placement changed—sufficiency of findings of fact

Findings were sufficient to support the trial court's conclusion that it was in the best interest of a sexually abused child to change his placement from a group home in Durham where he had "done well" and formed emotional attachments but had experienced further sexual abuse to a renowned clinic in Cumberland County closer to the parents who had abused and neglected him.

### Am Jur 2d, Infants §§ 16, 43, 53, 55.

Appeal by the guardian *ad litem* for Joseph Chasse from order entered 27 August 1992 by Judge Carolyn D. Johnson in Durham County District Court. Heard in the Court of Appeals 5 January 1994.

Durham County Department of Social Services (Durham DSS) instituted this action, pursuant to N.C. Gen. Stat. § 7A-561 (1989), alleging that the child, Joseph Chasse, was abused and neglected. Following a hearing on 26 May 1992, Judge Johnson found, *inter alia*, that the respondent-mother, Amey Chasse, had sexually abused the child and that respondent-father Michael Chasse had neglected the child by failing to protect the child from sexual abuse. The judge adjudicated the child to be abused and neglected and entered a dispositional order, suspending visitation between the child and his parents, placing custody of the child with Durham DSS, and ordering that the child remain in his placement at the Agape School in Durham "until such time as any of the parties can present to the Court and identify a placement which better meets the needs of the child." On 24 July 1992, the mother made a motion requesting that the court allow supervised visits with the child and permit the child to move to Cumberland County.

The court held hearings on the motion on 20 and 27 August 1992, and ordered that the child's placement be transferred to Cumberland County. From this order, the child's guardian *ad litem* appeals.

*Janice Perrin Paul for appellant Guardian ad Litem.*

*Assistant County Attorney Wendy C. Sotolongo for petitioner-appellee Durham County Department of Social Services.*

*Joseph M. Wilson, Jr. for respondent-appellee Amey Chasse.*

*Jeffrey R. Ellinger for respondent-appellee Michael Chasse.*

**IN RE CHASSE**

[116 N.C. App. 52 (1994)]

McCRODDEN, Judge.

The guardian makes numerous assignments of error to the court's conduct of the hearing and its order, and presents four arguments in support thereof: (I) that the trial court erred in prohibiting an alleged expert witness from testifying about adult sexual offender treatment, (II) that the court erred in denying the guardian's motion to recall the child's therapist to testify, (III) that the court erred in allowing the child to meet with his parents in the courthouse, and (IV) that the court's order was not supported by sufficient findings of fact and the findings did not support the conclusions of law. We find no reversible error and affirm the order of the trial court.

---

Joseph Chasse was born on 23 June 1983, and was adopted by respondents in late 1983. According to medical records, the child's biological mother used cocaine and heroin throughout her pregnancy, causing addiction in the child who underwent withdrawal for several weeks after birth. In 1987, the child was diagnosed with Attention Deficit Hyperactivity Disorder. Until early 1991, the child resided with his parents in Germany, where the father was stationed in the military; at that time, respondents sent him to live with his adoptive brother Gerald. In April 1991, Gerald, unable to handle the child's behavior, arranged for Joseph to stay at the Agape Corner School (Agape), a private, non-profit boarding school in Durham. While there, he lived in an apartment with Agape's director, Louise Roudebush, and developed some attachment to her.

In early October 1991, the child was evaluated by the Durham Community Guidance Clinic (the DCGC) to determine his intellectual, academic, and personality conditions. The evaluation concluded that he was learning disabled in reading and mathematics under formal North Carolina criteria, that he was an "extremely fearful and anxious child, who provides evidence of generalized fearfulness, separation-related anxieties, and fears of physical harm." The staff determined that these findings were consistent with a traumatic stress response, and that the findings, considered with his statements, suggested that he might have been exposed to physical and/or sexual abuse. Based on these findings, the DCGC recommended that he be assessed for possible sexual and physical abuse.

Nancy Berson, of the University of North Carolina Hospitals Child Trauma and Maltreatment Team, interviewed the child on several occasions. During these interviews the child stated that on

IN RE CHASSE

[116 N.C. App. 52 (1994)]

numerous occasions when he was living with his parents in Germany, the mother had hurt his private parts and had made him touch her genital area and that on at least one occasion his father had seen this happening and had told the mother to stop but with no success. The Child Trauma and Maltreatment Team reported the results of its interviews to Durham DSS.

In late 1991, respondents returned to the United States and were stationed at Fort Bragg in Cumberland County. The mother contacted Agape and the DCGC to gain information about the child and indicated to Agape that she wished to retake custody of the child. However, on 30 January 1992, she spoke with a doctor at DCGC and indicated that she was not interested in taking custody of the child at that time but merely wanted to ensure the appropriateness of his placement.

In December 1991, Durham DSS filed a petition alleging abuse and neglect of the child for whom it obtained nonsecure custody. Although Durham DSS opposed the placement of the child with Agape, the court ordered that the child continue to reside at Agape until the adjudicatory hearing.

The mother's 24 July 1992 motion, following the adjudication of abuse and neglect, alleged that a psychologist and a psychiatrist in Cumberland County had evaluated her and had determined that she would pose no threat to the child; that Cumberland County Department of Social Services (Cumberland DSS) had agreed to evaluate and place the child within Cumberland County; and that DSS had located an opening for placement of the child in Cumberland County. She requested visitation with the child, relocation of the child to Cumberland County, and a transfer of custody to Cumberland DSS. On 20 August 1992, the case came up for review.

At the hearing, Durham DSS called Valerie Wylly, a social worker with the Rumbaugh Mental Health Clinic (the Clinic) in Fayetteville, to testify as to the services that would be available to the child if the court transferred him to Cumberland County. According to her testimony, the Clinic is a unique demonstration program co-funded by the Department of the Army and the State of North Carolina that provides comprehensive mental health services to military dependents. She testified that she had interviewed the child to determine if he would be eligible to receive services from the Clinic and, upon determining that he was eligible, the treatment team recommended a therapeutic home, further therapy, and a neuropsychological examination for the child. She further testified that having to move to Cumberland Coun-

ty would be traumatic for the child because he had formed a bond with Roudebush and because he had been moved several times in the past.

Susan Shields, the supervisor of the social worker assigned to the child, testified that, by law, Durham DSS was required to work toward the reunification of a child with his parents and that such was the goal of Durham DSS in this case. Shields also testified that she understood that the child had developed a close relationship with Roudebush but that she believed that the child was not doing well at Agape.

Gael McCarthy, who had been the child's therapist since April 1992, testified that she believed that the child's placement at Agape was meeting his needs and that he should stay there. She testified that she believed that reunification of the child with his parents was not a reasonable goal because of the alleged sexual abuse. She stated that:

> [M]ost sex offender treatment takes three to five years when it's successful. In severe cases involving allegations of physical coercion, it's very rarely successful. There will be, I think, more evidence to that effect in future years. There is certainly some in the literature right now that adult sex offender treatment is, in the average case, not successful.

McCarthy further testified that the child had repeatedly expressed his desire to remain at Agape, that she believed that moving him from Agape to a therapeutic foster home, either in Durham or Cumberland County, would be traumatic for him, and that she could cite no reason for moving him.

The child's guardian *ad litem* called Dr. Richard Rumer, a psychologist, to testify. However, the trial court refused to allow him to testify as to adult sexual offenders because he had no personal knowledge of adult sex offenders.

Upon the recommendation of McCarthy, the court allowed the child to testify at the hearing. He testified that he wanted to stay at Agape because he felt safe there and that he did not want to return to his parents' house because his mother had done "ugly things" to him. He stated that on the previous night he had engaged in sexual behavior with his roommate at Agape, a fourteen-year-old boy named Roger. The child also testified that he would like to visit his parents but not live with them. The court asked the child if he would like to see his parents, and, when he said he would, ordered that his parents,

who were waiting outside the courtroom, be allowed to visit him immediately. McCarthy and a representative of Durham DSS supervised the visit, which took place in the court anteroom.

The court then recalled Roudebush who explained that Roger had reported the incident to her the previous night and that she had contacted the Durham police but not Durham DSS or the child's therapist. Finally, the court recalled McCarthy to give her reaction to the child's revelation that he had been sexually abused at Agape the previous night.

The hearing ended on 20 August 1992, before counsel could make their closing arguments. When the hearing resumed on 27 August 1992, the guardian moved to recall McCarthy to testify as to what she had learned from the child during a therapy session two days previous. The court denied this motion and, after hearing closing arguments, entered an order placing the child in the joint custody of Cumberland DSS and Durham DSS, ordering a transition of the child to Cumberland County according to the recommendations of the Clinic, denying visitation between the child and his parents unless the child's therapist and the parents' therapist agreed, and ordering that the child not be placed in the parents' home without further directive of the court.

---

I.

[1] The guardian first argues that the trial court erred in refusing to allow Dr. Rumer to testify as an expert witness in adult sex offender therapy. After refusing to hear Rumer's opinion testimony, the court stated, "[t]he witness is dismissed inasmuch as he has no personal knowledge of adult sexual offenders and that is the issue [for which guardian's counsel] has called him to testify."

The competency of a witness to testify is a matter within the sound discretion of the trial court and we will not ordinarily disturb its ruling. A finding that a witness is not qualified to give expert testimony is not reversible error, unless it represents an abuse of discretion or is based upon an erroneous view of the law. *In re Adoption of P.E.P.*, 100 N.C. App. 191, 199, 395 S.E.2d 133, 138 (1990), *rev'd on other grounds*, 329 N.C. 692, 407 S.E.2d 505 (1991).

The guardian argues that the court abused its discretion by incorrectly applying N.C. Gen. Stat. § 8C-1, Rule 702 (1992). She contends

that the court's refusal to allow Rumer to testify was based solely on his lack of clinical experience and was error. We agree.

The record reflects that counsel for Durham DSS objected to Rumer's testifying as to adult sex offenders because he had worked only with adolescent sex offenders. The following exchange occurred:

Court: Well, can you—do you know his credentials? Could you just ask him?

Q: Dr. Rumer, do you have any knowledge as to the length of therapy for sex offenders, adolescents and adults?

Court: I think you need to find out whether he has worked with adult sex offenders, [counsel]. That would be one way of doing it.

Q: Dr. Rumer, have you worked with adult sex offenders?

A: No, I have not. As I stated, in the course of preparing a paper about adolescent sexual offenders, I did the literature, reviewed the entire psychological literature, which included the review articles on treatment of adult sexual offenders.

[The father]: I will renew [Durham DSS]'s objection, Your Honor.

Court: Sustained.

[The guardian]: Your Honor, let me just ask, before I ask a bunch of other questions, if Dr. Rumer is going to be permitted to testify?

Court: He's not going to be permitted to testify about adult sex offenders.

Rule 702 allows a witness to give opinion testimony if he qualifies as an expert by "knowledge, skill, experience, training, *or* education . . . ." Rule 702 (emphasis added). An expert need not have had experience in the very subject at issue. *State v. Howard*, 78 N.C. App. 262, 270, 337 S.E.2d 598, 603 (1985), *disc. review denied*, 316 N.C. 198, 341 S.E.2d 581 (1986). It is enough that through study or experience the expert is better qualified than the fact-finder to render the opinion regarding the particular subject. *Id.* at 270, 337 S.E.2d at 604.

Rumer's lack of clinical experience should not have disqualified him from giving expert opinion testimony. His acknowledged expertise in the field of adolescent sex offenders and his study of the "entire psychological literature, which included the review articles on

treatment of adult sexual offenders," made him better qualified than the trial court to render an opinion on the length and efficacy of adult sexual offender therapy, and his testimony, therefore, would have been helpful to the trier of fact. It was error for the trial court to prohibit Rumer from testifying about adult sex offenders.

An error in the exclusion of evidence, however, is not ground for a new hearing unless the exclusion amounted to the denial of a substantial right. N.C. Gen. Stat. § 1A-1, Rule 61 (1990). To show that he was denied such a right, an appellant must show that the error prejudiced him and that it is likely that a different result would have ensued had the error not been committed. *Warren v. City of Asheville*, 74 N.C. App. 402, 409, 328 S.E.2d 859, 864, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985).

In this case, we believe that the exclusion of Rumer's opinion testimony did not prejudice the guardian. Since the guardian made no offer of proof to show what Rumer's testimony would have been, we have no way of ascertaining how the guardian was prejudiced. *Gibbs v. Light Co.*, 268 N.C. 186, 190, 150 S.E.2d 207, 210 (1966). Even if we were to assume that Rumer would have testified that the recidivism rate is high among adult sex offenders and that treatments are long and frequently unsuccessful, we can find no prejudicial error in excluding the testimony. The trial court admitted evidence to this effect when the therapist McCarthy testified that successful treatment programs for adult sexual offenders last from three to five years and that few programs are actually successful. The exclusion of Rumer's testimony was, therefore, harmless error. *See id.* Consequently, we reject this first argument.

## II.

[2] The guardian next argues that the trial court erred in refusing to allow the child's therapist to testify concerning her therapy session with the child following the child's in-court revelation of the incident of sexual abuse at Agape. We disagree.

Whenever a trial court holds a dispositional hearing, pursuant to N.C. Gen. Stat. § 7A-640 (1989), or a review hearing, pursuant to N.C. Gen. Stat. § 7A-657 (1989), it must determine the best interest of the child, and "any evidence which is competent and relevant to a showing of the best interest of that child must be heard and considered by the trial court, subject to the discretionary powers of the trial court

IN RE CHASSE

[116 N.C. App. 52 (1994)]

to exclude cumulative testimony." *In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984).

The guardian asserts that the testimony that McCarthy would have given was "critical to an appropriate dispositional determination." McCarthy would have testified that transferring the child away from Agape would have been detrimental to him and that, when she spoke with him about the incident at Agape, the child explained that he had been touched many times during that particular night, but not on many nights.

We believe that this testimony would have been cumulative of that which McCarthy had given previously and that the trial court, therefore, properly excluded it. In her original testimony, McCarthy expressed her opinion that the child should not be transferred because it would be traumatic for him. When she was recalled to testify after the child testified at the hearing, she expressed concern that he might have meant he was touched many times on one occasion rather than on many occasions. However, she stated that the question of whether it occurred on many occasions or just one, was really irrelevant to his protection; what mattered was that it occurred at all. Thus the substance of any testimony McCarthy would have given on 27 August was already before the court, and the trial court did not err in refusing to allow her to testify again. We reject the guardian's second argument.

## III.

[3] The guardian's third argument concerns the trial court's allowing the child to visit with his parents in the courthouse. The guardian asserts that because there was no showing of substantial change of circumstances, the trial court erred in allowing the child to visit his parents.

As was made plain in *In re Shue*, the governing standard in dispositional hearings and review hearings is not change of circumstances but the best interest of the child. 311 N.C. at 597, 319 S.E.2d at 574. Moreover, the guardian has shown no harm or prejudice to the child or his case arising out of the visit. *See Warren v. City of Asheville.*

## IV.

[4] Finally, the guardian argues that there were not sufficient findings to support the trial court's conclusion that it was in the best

interest of the child to change his placement to Cumberland County. We disagree.

In deciding the custody and placement of a child pursuant to Chapter 7A, a trial judge is vested with broad discretion, *In re Isenhour*, 101 N.C. App. 550, 553, 400 S.E.2d 71, 73 (1991), but must exercise that discretion to serve the best interest of the child. N.C. Gen. Stat. §§ 7A-640, -657 (1989). When making a disposition or reviewing one, a trial court must enter an order with findings sufficient to show that it considered the best interest of the child. *In re Shue.*

In this case the trial court found, among other things, that:

3. Although Agape is not a licensed foster care facility, the Court, in its adjudication and disposition order, authorized continued placement of the child at Agape Corner on a temporary basis. Testimony at the adjudicatory hearing tended to show that the child was progressing in that placement and at the time of said hearing, no more appropriate placement was available.

. . . .

6. . . . . . It is the assessment of the Court and the Rumbaugh Clinic that placement in a therapeutic foster home in Cumberland County would meet the child's placement needs. All other appropriate and available services would be provided to meet the mental health needs of the child.

. . . .

9. The child testified that he had been sexually abused by his mother and that his father was aware of the abuse.

10. The child further testified that he had been sexually abused "many times" by a 14-year-old boy named "Roger" who lived with him in Louise Roudebush's apartment at Agape Corner.

. . . .

12. Subsequent to the child's testimony, Louise Roudebush testified that there was a 14-year-old boy named "Roger" who shared a bedroom with Joseph Chasse in her apartment. Louise Roudebush testified that on the night of August 19, 1992, "Roger" had revealed to her that he had showed [*sic*] himself to Joseph Chasse, gotten in Joseph's bed and gotten on top of Joseph that night. She did not contact Durham DSS to give them this infor-

**IN RE CHASSE**

[116 N.C. App. 52 (1994)]

mation. She did not contact the child's CGC therapist to give her this information. Louise Roudebush was in the courthouse during the day of August 20, 1992 and had the opportunity to reveal this information prior to the child's testifying at approximately 4:30 p.m.

Based on these findings, the court concluded that it was in the best interest of the child that he be placed in the joint custody of Durham DSS and Cumberland DSS and that the Clinic develop and implement a plan to place the child in a therapeutic foster home in Cumberland County and to provide the child with mental health services.

The trial court in this case faced a nearly impossible choice: to allow the child to remain at Agape, where he had "done well" but had been sexually assaulted, or to subject the child to the trauma of being uprooted from Agape in order to move him to a renowned clinic closer to the parents who had abused and neglected him. The findings show that the court determined that it was not in the best interest of the child to remain at Agape. The court placed special emphasis on the facts that the child had been sexually abused at Agape on at least one occasion and that Roudebush had not reported the incident to DSS or the guardian and had not volunteered the information at any time before the child testified. Having found that the child should not stay at Agape, the court determined that placement in Cumberland County offered the most benefit to the child. The previously quoted findings support the court's conclusions that to stay at Agape was not in the child's best interest and that it was in his best interest to be placed in Cumberland County.

We believe that the trial court made a considered choice between unattractive options, and we shall not substitute our judgment for that of the trial court. We note, moreover, that over a year and a half have passed since the trial court entered its judgment. To reverse the trial court at this point and remand the case for a new hearing would only serve to disrupt the child's life further. Finding no reversible error, we refuse to do this.

Affirmed.

Judges JOHNSON and LEWIS concur.