IN RE: C.B., E.B., Minor Juveniles.
No. COA08-41
Court of Appeals of North Carolina
Filed July 1, 2008
This case not for publication
Purcell & Griswold, LLP, by Lisa D. Blalock, for Scotland County Department of Social Services petitioner-appellee.
Christopher M. Wood for Guardian ad Litem.
Rebekah W. Davis for respondent-appellant.
McCULLOUGH, Judge.
Respondent-mother ("mother") appeals the adjudication and disposition orders relating to her minor children, C.B. and E.B. Mother and the biological father ("father") of the children are not married. At the time of C.B.'s birth in 2006, mother and her older child, E.B., lived with mother's parents. Father did not reside with mother and had limited involvement with mother and the children. C.B. was born prematurely which resulted in chronic health problems.
On or about 13 August 2006, while feeding C.B., mother heard and felt a "popping" in C.B.'s back. The following day, mother took C.B. to the doctor. C.B. was transferred to the hospital where x-rays showed that C.B. had two to four broken ribs. C.B. was approximately four weeks old at the time.
On 18 August 2006, DSS received an abuse report from the hospital regarding C.B.'s injuries. Both mother and father have denied responsibility for C.B.'s injuries. However, mother voluntarily placed both children with her maternal aunt on 18 August 2006. Less than a week after this placement, the aunt decided that she could not care for the children, and they were placed with the paternal grandparents on 21 August 2006.
On 5 October 2006, the paternal grandparents decided that they could no longer care for the children, in part because of C.B.'s intensive medical needs. The children were returned to the maternal aunt on 5 October 2006. While the children were living with the maternal aunt, mother stayed in the aunt's home on a part-time basis.
On 17 October 2006, the maternal aunt took C.B. to the doctor, and it was determined that C.B. had new rib fractures estimated to be approximately one to two weeks old. As a result, C.B. was admitted to the hospital where he remained until 18 November 2006. While in the hospital, C.B. was evaluated for conditions that might predispose him to bone fractures, but none were found. During his hospital stay, C.B. also was treated for other medical conditions and additional testing revealed that C.B. had Angelman Syndrome which causes mental retardation and seizures.
On 18 October 2006, DSS filed juvenile petitions alleging that C.B. and E.B. were abused and neglected children due to C.B.'s injuries. The trial court awarded DSS non-secure custody of the children on the same day. Following an adjudication hearing on 14 June 2007, the trial court entered an order on 10 July 2007 adjudicating both children as abused and neglected. On 10 July 2007, the trial court conducted a disposition hearing. On 5 November 2007, the trial court entered its disposition orders in which it awarded custody of C.B. to DSS and awarded custody of E.B. to the paternal grandparents. In addition, the trial court relieved DSS of reunification efforts. Mother now appeals the adjudication and disposition orders.

I. ADJUDICATION ORDERS
We first address mother's challenges to several of the trial court's findings of fact in the adjudication orders for each of the minor children. "When an appellant asserts that an adjudication order of the trial court is unsupported by the evidence, this Court [must determine] whether there exists clear, cogent and convincing evidence to support the findings." In re McCabe, 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003); see N.C. Gen. Stat. §§ 7B-805, -807 (2007). "If there is competent evidence, the findings of the trial court are binding on appeal . . . even though the evidence might support a finding to the contrary." McCabe, 157 N.C. App. at 679, 580 S.E.2d at 73. "'The trial judge determines the weight to be given the testimony and the reasonable inferences to be drawn therefrom. If a different inference may be drawn from the evidence, he alone determines which inferences to draw and which to reject.'" Id. (quoting In re Hughes, 74 N.C. App. 751, 759, 330 S.E.2d 213, 218 (1985)). We will address each of the challenged findings of fact in turn.
Mother challenges finding of fact number 9, in each of the adjudication orders, which provides as follows: "During the period of time the minor children were in the custody of [maternal aunt], respondent mother saw them regularly and was the primary caretaker of them." Mother contends that the evidence does not indicate who was the primary caregiver as between mother and maternal aunt. While it is not clear what the trial court meant when it used the word "primary," the evidence, including mother's own testimony, establishes that mother was a regular caregiver and stayed overnight at the aunt's house every other night.
Nevertheless, it is not the determination of whether mother was the primary caregiver during this period that is relevant to the trial court's adjudication of abuse and neglect. Rather, it is the finding mother was providing care to C.B. on a regular basis, which mother does not appear to dispute. The significance of this finding is that it demonstrates that mother had access to and was providing regular care to C.B. both times that the rib fractures are thought to have occurred. Accordingly, this assignment of error is overruled.
Mother next challenges finding of fact number 10, contained in both adjudication orders, in which the trial court found:
On October 17, 2006, it was discovered that [C.B.], being approximately three months of age, was suffering from additional fractures, and he was thereafter sent to UNC hospitals where he stayed until November 18, 2006. Mother contends that this finding is erroneous because C.B.'s hospital stay was not due in its entirety to the new rib fractures, but also due to treatment required for C.B.'s other medical conditions. However, we do not read this finding to make any determination as to the reason for the length of C.B.'s stay in the hospital. Moreover, the trial court was fully aware of C.B.'s extensive medical problems as indicated in its detailed finding regarding these conditions later in the adjudication order. Accordingly, this assignment of error is also overruled.
Mother further asserts that finding of fact number 12, found in both orders, is unsupported by the evidence. This finding provides as follows:
The only time the respondent father has been around [C.B.] was on three occasions, at the Hospital, at the funeral home on another occasion, and on August 10, 2006 when respondent mother brought both children and stayed overnight with him. Respondent father was not left alone with [C.B.] during the overnight stay of August 10, 2006, and other persons were present on the other occasions.
Mother argues that father's testimony as to whether he was alone with C.B. on 10 August 2006 is "contradictory, argumentative, and inconsistent" and, consequently, cannot support the trial court's finding. We disagree.
A review of father's testimony reveals that he consistently denied being left alone at any time during mother's visit on 10 August 2006. However, mother contends that his testimony was contradictory as to whether mother took C.B. to the bathroom with her during the visit rather than leaving C.B. alone with father. Specifically, father testified as follows:
Q: Okay uhm but you did at least take care of the child while he was there but you were never left alone with him?
A: Never left alone, not once.
Q: Was there any reason you didn't hold him while [mother] just went to the bathroom, I mean that one time?
A: He was in the car seat asleep. I wouldn't bother an infant that's asleep, that's ridiculous.
Mother contends on appeal that this testimony indicates that father was left alone with C.B. while he was in the car seat. However, we believe mother has mischaracterized father's testimony. Father was only responding to the question regarding why he did not hold the infant for mother while she went to the bathroom. It does not indicate that mother did not take the child to the bathroom with her as he testified earlier.
We also disagree with mother's assertion that father's testimony that he fed C.B. at 3:00 a.m. during the visit indicated that he was alone with C.B. A review of father's testimony does not indicate that he was left alone while feeding C.B. Accordingly, mother's assignment of error as to finding of fact number 12 is overruled.
The final finding of fact in the adjudication orders challenged by mother is a portion of finding number 14 that "Dr. Aylesworth [an expert in pediatrics and genetics] spoke with respondent mother, who never described to him any possible accident that could have caused the fracture." Mother contends that the evidence does not support this finding. However, this finding closely tracks the exact testimony of Dr. Aylesworth:
Q: You did meet with the parents [of C.B.] at least on one occasion, is that correct?
A: I met uh, I met the mother a couple of times uh I never met the father; I don't recall meeting the father.
Q: Has the mother ever described to you an accident that could of explained the rib fractures?
A: Not that I recall.
Q: Has anybody described to you a possible accident that could of caused the fractures?
A: Not that I recall.
Because we conclude that the trial court's finding accurately reflects the expert's testimony, this assignment of error is overruled.
Mother's final challenge to the adjudication orders relates to the trial court's conclusion that E.B. was abused and neglected. As mother has acknowledged, the statutory definition of neglect expressly permits a trial court to consider whether a child lives in a home where another juvenile has been subjected to abuse and neglect. See N.C. Gen. Stat. § 7B-101(15) (2007). We conclude that the findings related to the abuse of C.B. and mother's failure to take responsibility for or otherwise explain the non-accidental injuries to C.B. are sufficient to support the trial court's conclusion that E.B. was neglected. See In re P.M., 169 N.C. App.423, 427, 610 S.E.2d 403, 406 (2005) (affirming the trial court's neglect adjudication on the basis of the neglect of other children in the home and mother's failure to take responsibility for such neglect).
While we affirm the trial court's adjudication of E.B. as neglected, we agree with mother's assertion that the trial court's adjudication of E.B. as abused is unsupported by the findings or the evidence. In its order, the trial court concluded that E.B. was an abused juvenile on the basis that mother "created or allowed to be created substantial risk of serious injury to the juvenile by other than accidental means[.]" This conclusion tracks the language of one of the statutory definitions of abuse at N.C. Gen. Stat. § 7B-101(1)(b). However, aside from the findings regarding the injuries to C.B., the only finding specifically referencing E.B. was that "[t]here has been no abuse noted throughout DSS' investigation regarding E.B.; she appears to be in good health, and there are no physical or medical findings regarding abuse to her." While findings that a juvenile's sibling was abused are certainly relevant to determining whether the juvenile herself is also at risk for abuse, the record does not contain sufficient additional evidence to support the trial court's conclusion that such risk was substantial. See McCabe, 157 N.C. App. at 679, 580 S.E.2d at 73. Consequently, we reverse the trial court's adjudication of E.B. as an abused juvenile.

II. DISPOSITION ORDERS
We next address the findings of fact that mother challenges in the trial court's disposition orders. In the dispositional phase, the trial court considers the best interests of the child. N.C. Gen. Stat. § 7B-903(a) (2007). This determination is reviewed for abuse of discretion. In re D.S.A., 181 N.C. App. 715, 720, 641 S.E.2d 18, 22 (2007). An abuse of discretion occurs when the trial court's decision is "manifestly unsupported by reason." White v. White, 312 N.C. 770, 777, 324 S.E.2d 829, 833 (1985). Pursuant to N.C. Gen. Stat. § 7B-901 (2007), in a disposition hearing, the trial court "may consider written reports or other evidence" which may include "hearsay evidence" if such evidence is "relevant, reliable, and necessary to determine the needs of the juvenile and the most appropriate disposition."
We first note that several of the findings challenged by mother are the same as those included in the trial court's adjudication order and which have been discussed above. As we have already determined these findings to be supported by clear and convincing evidence for the purposes of the adjudication order, we do not further address mother's challenges to these findings in the dispositional order.
Turning to the remaining findings of fact, we first address mother's challenge to finding of fact number 9 which follows:
In spite of the cooperation and progress of the respondent parents, the Court finds that there has never been a logical explanation for the serious injuries suffered by the juvenile in this matter. The injuries took place while in the care of the mother, she has blamed others for the injuries, and she has denied any involvement of acknowledgment with respect to said injuries.
Mother asserts that the trial court's finding that the "injuries took place while in the care of the mother" is unsupported by the evidence.
As an initial matter, the evidence, including mother's own testimony, shows that mother was providing care to C.B. at both times that the injuries occurred. While mother was not the only person providing care to C.B. during the relevant time periods, evidence that there were other care givers does not negate the trial court's finding. Moreover, the evidence shows that of the two groups of persons providing care to C.B., mother was the only person common to each group. When the first injury occurred, mother and her older child, E.B., were living with mother's parents and mother's two brothers and sister. When the second injury occurred, C.B. had recently moved from the paternal grandparents' home to mother's maternal aunt's home where mother spent every other night. The fact that mother was the only person providing care to C.B. at the time that each of the injuries likely occurred supports a finding that mother was responsible for the injuries to C.B. This assignment of error is overruled.
Similarly, we overrule mother's challenge to the trial court's finding number 25 that "[t]here currently exists no known relatives who are willing or able to provide a safe home for the juvenile." Mother contends that because she has completed every aspect of her case plan, she would be available to provide a safe home for C.B. Again, the trial court's evidence that the injuries occurred while in mother's care and that she has failed to provide an explanation for the injuries is sufficient to support the trial court's conclusion that mother is not able to provide a safe home for C.B.
We next address mother's contention that the evidence does not support finding of fact number 21 in C.B.'s disposition order which provides that "[t]he juvenile suffered no fractures or injuries . . . when placed with the McDougalds." Mother contends that because the estimated age of the second set of fractures was one to two weeks, the injuries would have occurred between 3 October 2006 and 19 October 2006. Mother contends that because C.B. left the McDougalds' home on 5 October, the trial court could not rule out the possibility that the injury occurred while in the care of the McDougalds. We disagree.
As we discussed above, mother was providing care at the time each set of fractures occurred. While C.B. was with the McDougalds for two days at the remote end of the estimated fourteen-day period of injury, the McDougalds were not providing care when the first set of injuries occurred. Consequently, we conclude that the trial court's conclusion that the second set of injuries did not occur while C.B. was with the McDougalds is supported by the evidence.
Mother next challenges the trial court's finding of fact number 24 in E.B.'s disposition order which provides as follows:
The juvenile [E.B.] is currently placed in the home of the paternal grandparents, Lynn and Beachum McDougald, and is doing very well in that placement. The home of Lynn and Beachum McDougald is a safe home within the meaning of the statute for the juvenile.
Mother contends that there was insufficient evidence presented at the hearing to support this finding of fact. We agree.
At the hearing, the paternal grandmother, with whom E.B. had been placed for approximately nine months, testified that E.B. was doing "fine." Little, if any, other testimony was presented at the hearing as to E.B. While the trial court specifically incorporated into the dispositional order reports from both DSS and the guardian ad litem, neither of these reports contain any information as to E.B.'s health and well-being while placed with her paternal grandparents. In fact, the record is almost completely devoid of any relevant information as to E.B.'s adjustment in her out-of-home placements or the appropriateness of the home of the paternal grandparents. As the record contains no evidence to support the trial court's finding regarding E.B.'s well-being or of the appropriateness of the paternal grandparents as a placement for E.B., we conclude that the trial court's finding of fact number 24 is not supported on these points.
We additionally conclude that the record lacks sufficient evidence regarding E.B. from which the trial court could make an appropriate determination as to a proper disposition for E.B. While we recognize that the trial court has broad discretion in crafting an appropriate disposition under N.C. Gen. Stat. § 7B-903, it must, nevertheless, make sufficient findings of fact to support a conclusion that the disposition is in the best interests of the child. N.C. Gen. Stat. § 7B-903; In re Chasse, 116 N.C. App. 52, 62, 446 S.E.2d 855, 860-61 (1994); see In re T.H.T., ___ N.C. App. ___, ___, 648 S.E.2d 519, 525 (2007). Further, N.C. Gen. Stat. § 7B-903(c) provides that if the trial court places the juvenile in the custody "of an individual other than the parents," as the trial court did in this case, the trial court must "verify that the person receiving custody of the juvenile understands the legal significance of the placement and will have adequate resources to care appropriately for the juvenile." The record before us lacks any indication of such a verification or any evidence that would support it. Consequently, we reverse the trial court's disposition order as to E.B. and remand for further disposition proceedings.

III. REUNIFICATION EFFORTS BY DSS
We next address mother's challenge to the trial court's conclusion in each of the disposition orders that reunification efforts by DSS should cease. N.C. Gen. Stat. § 7B-507(b) provides, in relevant part, as follows:
In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time. N.C. Gen. Stat. § 7B-507(b)(2007). "This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M., ___ N.C. App. ___, ___, 644 S.E.2d 588, 594 (2007).
As an initial matter, we do not address the trial court's cessation of reunification efforts for E.B. as we have determined above that this disposition order must be remanded for further proceedings. With respect to the disposition order for C.B., we reiterate the trial court's findings that mother has never provided a logical explanation for C.B.'s injuries, that "she has blamed others for the injuries, and she has denied any involvement or acknowledgment with respect to said injuries." We hold that these findings support the trial court's conclusions that any efforts at reunification of C.B. with mother under these circumstances would be futile.

IV. DELAY IN ENTRY OF DISPOSITION ORDERS
We next address mother's contention that the trial court erred in failing to enter its written disposition order with 30 days of the date of the disposition hearing as required by N.C. Gen. Stat. § 7B-905. The trial court conducted the disposition hearing on 10 July 2007 and the order was not entered until 5 November 2007. N.C. Gen. Stat. § 7B-905(a) provides, in pertinent part, as follows: The dispositional order shall be in writing, signed, and entered no later than 30 days from the completion of the hearing, and shall contain appropriate findings of fact and conclusions of law.
Further, this Court has held that when a trial court fails to comply with this time requirement, the error does not require reversal absent a showing of prejudice. In re T.H.T., ___ N.C. App. at ___, 648 S.E.2d at 527 (2007); see also In re E.N.S., 164 N.C. App. 146, 153-54, 595 S.E.2d 167, 171-72, disc. review denied, 359 N.C. 189, 606 S.E.2d 903 (2004).
We conclude that mother has failed to adequately articulate prejudice to warrant reversal in this case. The record indicates that mother continued to visit with C.B. and E.B. prior to the entry of the disposition order, and that the children have remained in their respective placements throughout the adjudication and disposition proceedings and following the entry of the disposition order. Therefore, we find the untimely filing did not result in prejudice to mother with regard to either her right to visitation or her appeal. We further reject mother's argument that she was prejudiced by a lack of clarity regarding the trial court's oral pronouncements at the conclusion of the disposition hearing. Our review of the transcript of the hearing reveals that the trial court clearly communicated its respective placements for the minor children and that reunification efforts would be ceased. Accordingly, this assignment of error is overruled.

V. VISITATION
In her final assignment of error, mother contends that the trial court failed to provide for visitation in the disposition order as required by statute. We agree.
N.C. Gen. Stat. § 7B-905(c) provides in pertinent part as follows:
Any dispositional order under which a juvenile is removed from the custody of a parent, guardian, custodian, or caretaker, or under which the juvenile's placement is continued outside the home shall provide for appropriate visitation as may be in the best interests of the juvenile and consistent with the juvenile's health and safety.
Further, we have held that "the court should safeguard the parent's visitation rights by a provision in the order defining and establishing the time, place and conditions under which such visitation rights may be exercised." In re Custody of Stancil, 10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971).
Neither of the disposition orders provide for visitation. Because the trial court failed to specifically provide for visitation between mother and the minor children, we remand for further proceedings regarding visitation.
Affirmed in part, reversed in part and remanded for further proceedings in conformance with this opinion.
Judges WYNN and BRYANT concur.
Report per Rule 30(e).