An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 25-88

Filed 21 January 2026

Union County, No. 19CVD001638-890

JUSTIN FREDERICK MEYER, Plaintiff,

v.

COLLEEN CATHERINE GRIBBEN, Defendant.

Appeal by Defendant from Order entered 18 July 2024 by Judge Christopher A. Gray in Union County District Court. Heard in the Court of Appeals 11 September 2025.

*Justin Frederick Meyer, pro se Plaintiff-Appellee.*

*Sodoma Law, by Rebecca K. Watts, for Defendant-Appellant.*

HAMPSON, Judge.

**Factual and Procedural Background**

Colleen Gribben (Defendant) appeals from an Order on Permanent Child Custody awarding Justin Meyer (Plaintiff) legal custody and primary physical custody of the parties' two minor children. The Record before us tends to reflect the following:

Plaintiff and Defendant began a relationship in 2014. They lived together from 2014 until 3 June 2019, when they separated. They are the biological parents of two minor children.

On 5 June 2019, Plaintiff filed a Complaint for Child Custody and an Ex Parte Motion for Emergency Custody in Union County District Court. The trial court granted Plaintiff emergency custody the same day. In August 2019, Plaintiff and Defendant agreed to a consent order on temporary emergency custody. In October 2019, the parties participated in mediation but did not resolve the issue of permanent custody.

After a hearing in November 2019, the trial court entered a Temporary Custody Order in December 2019. This Order gave primary physical custody to Plaintiff, joint legal custody to the parties, and visitation rights to Defendant. The visitation schedule provided Defendant with a weekly dinner visit and custody of the children on alternating weekends.

The first permanent custody trial was held on 14 and 15 June 2021 before Judge William Helms, III. Upon its conclusion, Judge Helms made verbal comments from the bench indicating what he intended to enter as an order. However, Judge Helms never entered an order prior to his retirement.[1]

---

[1] After learning of Judge Helms's retirement, the parties met with Chief District Court Judge Erin Hucks to discuss the status of the case. Chief Judge Hucks determined Judge Helms had not made sufficient findings that would permit her to enter an order on permanent custody.

In the proceedings below, Defendant claimed that around August 2021 the parties began to follow a new custody schedule in keeping with Judge Helms's verbal comments about the schedule he intended to set out in his written order (the "alternate custody schedule").[2] According to Defendant, this arrangement gave her more visitation time than she had had under the terms of the December 2019 Temporary Custody Order. Defendant claimed the parties followed this alternate schedule from late July 2021 until April 2024, when they had a dispute about exchanging the children at the end of their spring break.

A second permanent custody trial was held on 10 and 11 July 2024. The trial court declared the June 2021 trial before Judge Helms a mistrial because an order was never entered. Evidence consisted of testimony from Plaintiff, testimony from Defendant, and various documents referenced in their testimony.

Plaintiff testified that his decision to seek emergency custody in June 2019 was precipitated by concerns about the impact on the minor children of Defendant's "heavy" alcohol use, mental health issues, and various forms of improper parenting. For example, Plaintiff testified, and Defendant confirmed, that Defendant had driven drunk with the children in the car. Evidence indicated Defendant had entered an inpatient facility on 4 June 2019 for a twenty-eight day alcohol recovery treatment program. Since that date, Plaintiff had been "primarily responsible for the daily care

---

[2] Plaintiff disputes Defendant's claims about the alleged alternate custody schedule.

of the minor children."

On cross-examination, defense counsel asked Plaintiff about the custody schedules the parties followed subsequent to the entry of the December 2019 Temporary Custody Order:

> [Defense Counsel]: Okay. Um, at some point in 2021, did you and [Defendant] begin following a different schedule, other than this one in two thousand – from 2019?
>
> [Plaintiff's Counsel]: I would object to all of this testimony, Your Honor, because what you have is a judge who is no longer a judge basically extorting that being done, and he never followed up with an order. Because I – I don't see how this can be pertinent at all when, as you said before, I'm going to have to declare a mistrial.
>
> [Trial Court]: At this point, [defense counsel] just asked if the parties for some reason operated under some different arrangement by consent. You certainly – so the objection is overruled, but you can certainly flesh that out.
>
> [Plaintiff's Counsel]: Your Honor, it would be our contention it wasn't by consent.
>
> [Trial Court]: [T]hat may be the case. I don't think [defense counsel has] quite gone far enough down that path yet.

Defense counsel then asked Plaintiff, "So at some point in 2021 you and [Defendant] began following a different custody schedule, correct?"; Plaintiff answered, "Correct."

Defense counsel asked Plaintiff additional questions about the custody schedule set out in the December 2019 Temporary Custody Order, before returning to the topic of a change in the schedule in 2021:

[Defense Counsel]: [S]o tell me at what point in time in 2021 that you and [Defendant] began following a different schedule, if you can recall?

[Plaintiff's Counsel]: Objection again, Your Honor.

[Trial Court]: Overruled.

[Defense Counsel]: Do you recall when that occurred? When you followed a different schedule?

[Plaintiff]: Um, after school began.

[Defense Counsel]: [G]oing back to 2021, do you recall about what – what time period when Union Academy started school?

[Plaintiff]: That's August – August 1st.

[Defense Counsel]: Okay. And so what was the custodial arrangement at that time?

[Plaintiff's Counsel]: Objection. The order speaks for itself. We're getting into things, we have a valid order. That temporary order is such – in fact, that temporary order might be a permanent order by operation of law right now.

[Trial Court]: Well, that's – that's also possible, but overruled. The order does speak for itself, but . . . if it was the case that the parties operated under a different schedule by mutual consent, then I think [defense counsel] is allowed to ask questions about that.

[Defense Counsel]: Okay. What schedule were you following starting for the 2021, um, school year of Union Academy?

[Plaintiff]: Um, it was starting – starting the school year. This was after the summer had gone – had gone by. Uh, under – under the duress of a vindictive judge, I followed a . . . verbal outline of what he said was gonna be or potentially be . . . the week before school started. And uh, the – the outline of that is, uh Thursday –

Plaintiff's counsel objected again, "because [Plaintiff] said [the custody schedule] wasn't by consent, it was under duress." This time, the trial court sustained the objection.

Defense counsel advocated to allow the testimony:

> [Defense Counsel]: Your Honor, I do believe it's relevant to know what kind of schedule the children were following. For a three year period it is relevant to know where the children were going back and forth overnight for the last three years.
>
> [Trial Court]: It very well may have been, but the problem is, is that what [Plaintiff is] going to be testifying about is what a former judge who's not going to be here to testify told them they were going to be doing. So I don't think that there's any way that the rules of evidence are going to let you get down there.
>
> [Defense Counsel]: Well again, Your Honor, the children were actually going back and forth from certain – one household to another on certain nights of the week, and I believe that is completely relevant in this action because we are trying to look at the totality of all the circumstances since this case began in 2019, and you're – at this point in time we would be leaving out three years of evidence.
>
> [Trial Court]: Objection sustained.

Defense counsel then returned to cross-examination:

> [Defense Counsel]: All right. [Plaintiff], at what point in time did you and [Defendant] kind of revert back to this 2019 order, as far as the schedule goes?
>
> [Plaintiff]: That was the –
>
> [Plaintiff's Counsel]: Well, Your Honor, I'm going to object to that also, because it's – it's just a different way of trying to get into stuff that you've already ruled that [defense counsel] can't get

into. And I – you know, I don't want somebody arguing that the door has been opened.

[Trial Court]: Sustained.

[Defense Counsel]: [Plaintiff], for spring break of 2024, um, who had the children for spring break this past year, for 2024?

[Plaintiff's Counsel]: Objection, unless the question is based upon the only order that's in effect. Otherwise we're getting back into what some judge supposedly did.

[Trial Court]: Overruled as to what – where the kids were for spring break in 2024.

[Plaintiff]: Did you ask me who had them for spring break of this year?

[Defense Counsel]: Yes[.]

[Plaintiff]: [Defendant] did.

Defense counsel made no further inquiries into the alleged alternate custody schedule.

The trial court entered an Order on Permanent Child Custody on 15 July 2024. Plaintiff was awarded legal custody and primary physical custody of the children; Defendant was awarded secondary physical custody in the form of visitation.

The trial court made three Findings of Fact related to the June 2021 trial before Judge Helms and the parties' custody schedule from 2021 to 2024:

14. That the parties hereto operated pursuant to Judge Higdon's [December 2019] temporary custody order until at least the hearing before the now retired Hon. William F. Helms III on or about 14 June 2021 and 15 June 2021. Following the hearing on permanent child custody on those dates, Judge Helms made some

comments from the bench setting out what he indicated were his intentions to enter as an order.

15. That an order following the hearing on permanent child custody was never entered by Judge Helms, notwithstanding the multiple attempts of counsel for the parties hereto to follow up on the status of said order.

16. Ultimately, Judge Helms retired without an order on permanent child custody having been entered. There is some evidence that the parties began at or around the time of Judge Helms' verbal preliminary indication as to what his ruling would be and there is some evidence that the parties hereto began to follow a child custody schedule consistent therewith, however there is no evidence as to what that child custody schedule was and therefore there is no evidence as to what the child custody arrangement was from approximately June of 2021 until approximately the minor children's spring break of 2024.

Defendant filed Notice of Appeal on 5 August 2024.

## Issues

The issues on appeal are whether: (I) the trial court abused its discretion by excluding evidence about the parties' child custody schedule from 2021 to 2024; and (II) the trial court's Findings of Fact are sufficient to support its child custody award.

## Analysis

I.    Evidence of Alternate Custody Schedule

Defendant argues the trial court abused its discretion by excluding evidence related to the alternate custody schedule she claims the parties followed for approximately three years, from late summer 2021 to April 2024. Defendant makes no argument that the excluded testimony was admissible under the North Carolina

Rules of Evidence. Rather, Defendant contends the trial court was required to accept the testimony as evidence supporting its inquiry into the best interest of the children.

A trial court's decision to exclude evidence is reviewed for abuse of discretion. *Brown v. City of Winston-Salem*, 176 N.C. App. 497, 505, 626 S.E.2d 747, 753 (2006) (citation omitted). "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision." *In re C.J.H.*, 240 N.C. App. 489, 492-93, 772 S.E.2d 82, 86 (2015) (citation and quotation marks omitted). "[T]he trial court may also abuse its discretion by making a discretionary decision based upon a misapprehension of the applicable law." *Watauga Cnty. on behalf of McKiernan v. Shell*, 264 N.C. App. 608, 615, 826 S.E.2d 739, 744 (2019) (citation omitted).

"When a court for the first time decides the issue of permanent custody, it must determine which party to the dispute will 'best promote the interest and welfare of the child.' " *Regan v. Smith*, 131 N.C. App. 851, 853, 509 S.E.2d 452, 454 (1998) (quoting N.C. Gen. Stat. § 50-13.2(a)) (other citations omitted). "In custody determinations, the best interest of the child is the overriding factor." *Wilson v. Williams*, 42 N.C. App. 348, 351, 256 S.E.2d 516, 518 (1979) (citation omitted). "A judgment awarding custody is based upon the conditions found to exist at the time it is entered." *Stanback v. Stanback*, 266 N.C. 72, 76, 145 S.E.2d 332, 335 (1965).

"[W]hen a trial court is determining custody, 'there is no burden of proof on either party on the best interest [of the child] question.' " *Lamond v. Mahoney*, 159

N.C. App. 400, 405, 583 S.E.2d 656, 659 (2003) (internal quotation marks omitted) (quoting *Ramirez-Barker v. Barker*, 107 N.C. App. 71, 78, 418 S.E.2d 675, 679 (1992), *overruled on other grounds by Pulliam v. Smith*, 348 N.C. 616, 501 S.E.2d 898 (1998)). "Instead, the parties have the obligation to present whatever evidence they believe is pertinent in deciding the best interests of the child." *Id.* "The trial court bears the responsibility of requiring production of any evidence that may be competent and relevant on the issue." *Id.* at 405, 583 S.E.2d at 659-60 (citation and quotation marks omitted). Thus, the trial court "must . . . hear[ ] and consider[ ]" any evidence "which is competent and relevant to a showing of the best interest of the child, subject to [its] discretionary powers . . . to exclude cumulative testimony." *In re Shue*, 311 N.C. 586, 597, 319 S.E.2d 567, 574 (1984). "Without hearing and considering such evidence, the trial court cannot make an informed and intelligent decision concerning the best interest of the child." *Id.*

Defendant is correct we have previously found a trial court abused its discretion by excluding evidence of best interests in a custody modification trial. *See Cash v. Cash*, 284 N.C. App. 1, 11, 874 S.E.2d 653, 660 (2022). There, the trial court specifically declined to consider evidence reflecting on the best interests of the child as it related to whether there had been a substantial change in circumstances supporting a modification of a prior permanent custody award. *Id.* at 9-10, 874 S.E.2d at 659-60. The Court in *Cash* determined this was a misapprehension of law. *Id.* at 11, 874 S.E.2d at 660.

Here, the trial court excluded evidence of a custody schedule allegedly rendered by a prior judge in the case but never entered as an order. Indeed, the trial court initially permitted Defendant's attorney to ask Plaintiff about a custody schedule the parties began to follow that was "different" from the schedule set out in the December 2019 Temporary Custody Order. It allowed these questions on the ground the parties may have followed the alternate schedule "by mutual consent" and not pursuant to the comments of Judge Helms. However, once Plaintiff testified that they followed the alternate schedule "under the duress of a vindictive judge," the trial court sustained objections to further questions or testimony on this topic. We cannot say this constituted a misapprehension of law or otherwise arises to the level of an abuse of discretion. Indeed, a custody order—even as rendered by a trial court—is not enforceable until it is entered as a written order. *Carland v. Branch*, 164 N.C. App. 403, 405, 595 S.E.2d 742, 744 (2004) (citations omitted).

Nevertheless, Defendant further contends the trial court's ruling swept too broadly by excluding all evidence about how the parties purportedly operated under the schedule announced by Judge Helms. Defendant asserts "the parties could have testified about what they had actually been doing . . . without testifying about what Judge Helms said from the bench."

Presuming without deciding the exclusion of testimony about the alleged alternate custody schedule was error, it did not prejudice Defendant. An error in the exclusion of evidence does not warrant reversal unless the error amounted to the

denial of a substantial right. N.C. Gen. Stat. § 1A-1, Rule 61 (2023). "To show that he was denied such a right, an appellant must show that the error prejudiced him and that it is likely a different result would have ensued had the error not been committed." *In re Chasse*, 116 N.C. App. 52, 60, 446 S.E.2d 855, 859 (1994) (citation omitted).

We note first that Defendant's brief makes no specific argument that the alleged error was prejudicial. Defendant only asserts the trial court abused its discretion and asks us to vacate the Order and remand for a new permanent custody trial. Thus, Defendant offers no explanation and cites no authority as to why we should hold the alleged error prejudicial rather than harmless.

Nor does our own review of the Record convince us Defendant was prejudiced by the trial court's ruling. Defendant argues the exclusion of this evidence left the trial court with a "blurry snapshot of the current custodial situation along with tons of information about what the situation had been in 2019 – 2021." Defendant opines, without evidence about the alternate custody schedule, the trial court "did not have the necessary information to make a best interests determination."

However, the challenged ruling did not prevent Defendant from offering ample evidence about her fitness as a parent and the children's experience in her care at any time prior to trial, including from late July 2021 to April 2024, when Defendant claims the parties followed an alternate custody schedule. For example, Defendant: (1) introduced photos of herself and the children ranging "from 2019 to 2024"; (2)

testified "I am attuned to their needs, their academic needs, their social needs, every need . . . I have taken care of and provided for these last five years, in addition to the previous years that we were under the same roof"; (3) testified that she helps the children with their homework and communicates with their teachers; (4) testified about her volunteer work at the children's school in recent years; (5) testified her home was a safe environment for the children; and (6) testified about her involvement at their school, their active participation at her church since 2019, and their "safe and loving church family." Defense counsel also cross-examined Plaintiff about events that occurred during the alleged alternate custody schedule period.

Furthermore, Defendant has not explained why evidence on the topic of the alleged alternate custody schedule would have necessarily supported her position, such that a different custody award would have ensued had the evidence been admitted. *See Chasse*, 116 N.C. App. at 60, 446 S.E.2d at 859. Defense counsel argued the testimony would pertain to the weekly calendar of custody during this period, in which "the children were actually going from . . . one household to another on certain nights of the week[.]" It is not evident why testimony about the specific weeknights or the total number of nights the children spent in either home would favor one party over the other on the critical best interests issue. As such, we cannot discern how, as Defendant argues, the "[trial] court robbed itself of the information it needed to make a custody determination based on [the] current best interests" of the children by excluding this evidence.

Thus, presuming without deciding the exclusion of evidence about the alleged alternate custody schedule was error, Defendant has failed to demonstrate prejudice. Therefore, the trial court did not commit prejudicial error in excluding evidence of the parties' alternate custody schedule. Consequently, the trial court's exclusion of this evidence did not amount to an abuse of discretion.

II.     Sufficiency of Findings to Support Custody Award

Defendant next argues the trial court's Findings of Fact are insufficient to support its award of custody. Defendant does not challenge any specific Finding as unsupported by competent evidence; rather, she asserts the Findings viewed cumulatively are "not of sufficient quality" to allow this Court to determine whether the custody award is in the best interests of the children.

"An order for custody of a minor child entered pursuant to this section shall award the custody of such child to such person, agency, organization or institution as will best promote the interest and welfare of the child." N.C. Gen. Stat. § 50-13.2(a) (2023). In fulfilling this directive, "trial courts are vested with broad discretion in child custody matters. This discretion is based upon the trial courts' opportunity to see the parties; to hear the witnesses; and to detect tenors, tones, and flavors that are lost in the bare printed record read months later by appellate judges[.]" *Shipman v. Shipman*, 357 N.C. 471, 474, 586 S.E.2d 250, 253 (2003) (citations and quotation marks omitted).

"To support an award of custody, the judgment of the trial court should contain

findings of fact which sustain the conclusion of law that custody of the child is awarded to the person who will best promote the interest and welfare of the child." *Montgomery v. Montgomery*, 32 N.C. App. 154, 157, 231 S.E.2d 26, 29 (1977) (citations and quotation marks omitted). "These findings may concern physical, mental, or financial fitness or any other factors brought out by the evidence and relevant to the issue of the welfare of the child." *Steele v. Steele*, 36 N.C. App. 601, 604, 244 S.E.2d 466, 468 (1978).

> "In a child custody case, the trial court's findings of fact are conclusive on appeal if supported by substantial evidence, even if there is sufficient evidence to support contrary findings. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Unchallenged findings of fact are binding on appeal. The trial court's conclusions of law must be supported by adequate findings of fact. . . . Absent an abuse of discretion, the trial court's decision in matters of child custody should not be upset on appeal."

*Carpenter v. Carpenter*, 225 N.C. App. 269, 270, 737 S.E.2d 783, 785 (2013) (alteration in original) (quoting *Peters v. Pennington*, 210 N.C. App. 1, 12-13, 707 S.E.2d 724, 733 (2011)). "Although a custody order need not, and should not, include findings as to each piece of evidence presented at trial, it must resolve the material, disputed issues raised by the evidence." *Id.* at 273, 737 S.E.2d at 787. Whether the trial court's findings of fact support its conclusions of law is reviewed de novo. *Hall v. Hall*, 188 N.C. App. 527, 530, 655 S.E.2d 901, 904 (2008) (citation omitted).

In the case *sub judice*, the Order on Permanent Child Custody contains seventy-seven Findings of Fact. The first sixteen Findings recite biographical

information about the parties, the grounds for jurisdiction, and the procedural history of the case. Findings 17 through 42 describe events during the parties' relationship from 2014 to their separation in June 2019. These Findings include information about Defendant's alcohol abuse during and after her pregnancies and the related challenges to the parties' relationship and ability to jointly parent their children. For example, the trial court found Defendant, per her own admission at trial, had driven drunk with the children in the car. The trial court also resolved material, disputed issues raised by the evidence about Defendant's alcohol abuse. *See Carpenter*, 225 N.C App. at 273, 737 S.E.2d at 787. It noted Defendant's testimony that her overconsumption of alcohol began in 2017 "due to what she referred to as 'abuse' perpetrated by the Plaintiff." However, the trial court found Defendant was "unable to answer more specific questions as to what specific events or action she was referring to as 'abuse[.]' "[3]

In reference to the Findings concerning her alcohol abuse in the years prior to the parties' separation in 2019, Defendant suggests throughout her brief that the trial court focused too much on past events and not enough on the children's "current circumstances." Defendant acknowledges that such "[f]ive year old evidence is relevant in the big picture context" but asserts it does not "tell us about the children

---

[3] In a related Finding, the trial court "conclude[d] as a matter of fact that [Defendant] is not a credible witness," based on its observations of Defendant's demeanor, responses to questions, and "sudden apparent onset of memory loss during cross examination."

or their needs today." To the extent Defendant suggests evidence of her alcohol abuse and related conduct should play a diminished role in the custody determination because the events happened in the past, we disagree. In *Speagle v. Seitz*, the North Carolina Supreme Court disapproved of an inference this Court made in its opinion below that "custody proceedings . . . cannot or should not be concerned with past circumstances or past actions and conduct of a parent when determining custody as between parents[.]" 354 N.C. 525, 531, 557 S.E.2d 83, 87 (2001), *cert. denied*, 536 U.S. 923, 122 S. Ct. 2589, 153 L. Ed. 2d 778 (2002) (Mem.). Instead, our Supreme Court "conclude[d] that any past circumstance or conduct which could impact either the present or the future of a child is relevant, notwithstanding the fact that such circumstance or conduct did not exist or was not being engaged in at the time of the custody proceeding." *Id.* Under *Speagle*, it is clear the trial court in the instant case was entitled to make Findings about prior acts of Defendant it considered relevant to determining the custody award that would serve the best interests of the children.

Further, the trial court made sufficient Findings about the children's current welfare and best interests at the time of the custody proceeding, which supported its custody award in favor of Plaintiff.[4] These Findings include: (1) Plaintiff had been

---

[4] We note the trial court also made Findings favorable to Defendant, such as: the appropriateness of her home and means of transportation for the children; her home is "merely minutes" from the children's school; the flexibility of her employment; her active participation in the children's schooling and extracurricular activities; and that the time Defendant and the children spend together "appears to be great fun." These Findings supported the trial court's Conclusion of Law that

primarily responsible for the daily care of the children since Defendant entered the inpatient alcohol treatment program in June 2019; Plaintiff organized the children's enrollment at a school with "superior academic standards" at which the children are "developing well"; Plaintiff is employed as a consultant in a mostly remote job; Plaintiff provides a safe home that the children enjoy; Plaintiff "ensures the children receive necessary medical and dental care"; and Plaintiff does not drink alcohol on a regular basis or to excess.

Thus, the trial court's Findings of Fact are supported by competent evidence. The Findings in turn support its Conclusions of Law that Plaintiff is the fit and proper person to have legal custody and primary physical custody of the parties' minor children and that said custody award is in the children's best interests. Consequently, the trial court's Findings of Fact are sufficient to support the custody award.

## Conclusion

Accordingly, for the foregoing reasons, we affirm the trial court's Order on Permanent Child Custody.

AFFIRMED.

---

"the Defendant is a fit and proper person to have visitation with the parties' minor children, and it is in the minor children's best interests that the Defendant have visitation with the minor children." However, even in light of the Findings favorable to Defendant, the Findings favoring Plaintiff, which are supported by competent evidence, provided sufficient grounds for the trial court to award legal custody and primary physical custody to Plaintiff. *Cf. Hall*, 188 N.C. App. at 530, 655 S.E.2d at 904 ("When the trial court finds that both parties are fit and proper to have custody, but determines that it is in the best interest of the child for one parent to have primary physical custody, as it did here, such determination will be upheld if it is supported by competent evidence." (citation omitted)).

Judges WOOD and GRIFFIN concur.

Report per Rule 30(e).